ATKINSON, Appellee,

v.

INTERNATIONAL TECHNEGROUP, INC., Appellant.*

[Cite as *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930694.

Decided Sept. 13, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 74 Ohio St.3d 1525, 660 N.E.2d 744.

*Freking & Betz, Randolph H. Freking* and *Susan Sauter,* for appellee.

*Graydon, Head & Ritchey, John C. Greiner* and *Daniel E. Burke,* for appellant.

HILDEBRANDT, Judge.

Defendant-appellant, International Technegroup, Inc. ("ITI"), appeals from a judgment of the Hamilton County Court of Common Pleas in favor of plaintiff-appellee, Andrews Atkinson, in the amount of $447,844.55 on appellee's claims for age discrimination and breach of an express or implied employment agreement. We affirm the trial court's judgment.

ITI is a consulting and service group which develops and supplies computer software to business clients for manufacturing applications. In February 1989, appellee, who was then fifty-five years of age, began working at ITI as an independent contractor. Pursuant to a written consulting agreement, appellee's duties were to sell ITI's products and services on commission. The agreement provided that appellee would receive six percent of the amount of ITI products he sold and fifty percent of the consulting revenue he produced. Additionally, he would receive a ten thousand dollar bonus plus eight percent of revenue upon obtaining the first five hundred thousand dollars of sales of ITI's products and services.

ITI is divided into several separate entrepreneurial divisions, each of which is responsible for marketing individual ITI products and services. Appellee was first assigned to the IGES group, ITI's largest and most profitable division.

Within two months, appellee had sold $240,000 of IGES software. On March 6, 1989, Edward Carl, ITI's vice president of sales, notified appellee in writing that he was amending the consulting agreement to reflect that appellee would receive six percent of all new account revenue. However, Carl made no mention of the $10,000 bonus and appellee claimed that he retained the right to earn the bonus when he generated $500,000 of sales in a fiscal year.

Effective July 1, 1989, appellee was transferred to ITI's Integrated Manufacturing Engineering Group ("IME"), which was managed by thirty-six-year-old Scott Leckie. Because at that time IME had no products, appellee sold consulting services concerning automation of manufacturing processes. ITI was compensated on an hourly basis for these consulting services.

According to appellee, Carl agreed to allow appellee to become an employee of ITI to compensate for appellee's lost revenue due to not selling IGES products. Although appellee became eligible for employee benefits such as health insurance, he continued to be compensated solely on a commission basis.

During appellee's tenure with IME, the division began a search of the industry for a product it could sell. Through this search, ITI discovered that the Fanuc division of the General Electric Company ("GE") possessed a computer software program, GE–CAPP, which allowed a computer to assist in the manufacturing of a product. This software was attractive because it already had an established user base. Appellee testified that he and Leckie worked together to acquire this program from GE. In mid–1990, ITI purchased GE–CAPP from GE for $2,000,-000 and renamed it CAPP/MD.

Appellee began to demonstrate CAPP/MD to potential customers. Additionally, appellee continued to service the existing customers of the program. In the first year after ITI's purchase of CAPP–MD, appellee sold projects at a price of $100,000 each to several companies.

However, CAPP–MD was not without competition. One of ITI's competitors, Prime Computer Division, owned a similar, although more flexible, computer software program called MULTICAPP. In June 1991, ITI acquired MULTICAPP from Prime Computer Division at no cost because Prime Computer chose to divest itself of the product. In February 1991, ITI hired Richard Franzosa to sell MULTICAPP for the IME division. Franzosa, who was in his late thirties, had previously sold MULTICAPP for Prime Computer. Unlike appellee, Franzosa received a salary of approximately $80,000 per year. Franzosa was also entitled to participate in various ITI stock plans.

While Franzosa and Leckie devoted all of their efforts to marketing MULTICAPP, appellee continued to market CAPP/MD. Appellee testified that it was his philosophy to form a partnership with his sales clients so that they would

remain prospects for continued sales. This philosophy was consistent with the marketing strategy of ITI's chairman of the board, Jack Lemon. Lemon testified that "consultative selling," continually servicing the client so as to garner consulting work and additional sales over the long run, was very important to ITI and that he had instructed Leckie to pursue this sales philosophy.

The IME division under Leckie's management was not showing a profit. For the fiscal year ending June 30, 1991, IME lost $123,742, in contrast to ITI as a whole, which showed a profit. Had it not been for the losses generated by MULTICAPP, IME would have shown a profit of $6,000 for that period. In the meantime, appellee sold his clients $544,000 in CAPP/MD services for the fiscal year ending June 30, 1991. By October 31, 1991, appellee had generated more than $800,000 in revenues.

Because he had achieved more than $500,000 in sales for the fiscal year 1991, appellee asked Leckie about payment of the $10,000 bonus that appellee believed he had earned pursuant to the consulting agreement. Leckie responded that he would have to check with his superiors. Leckie later informed appellee that ITI was not going to pay him the bonus because of Carl's unilateral decision to alter the terms of the consulting agreement.

On the morning of October 31, 1991, appellee negotiated a $300,000 project with GE. Upon his return to ITI, Leckie asked to speak to him after lunch. At 2:00 that afternoon, Leckie handed appellee a letter of termination. The letter provided that ITI would continue to pay appellee commissions due on existing purchase orders through the duration of the project and that commissions on maintenance contract revenue would be paid through December 31, 1991. Leckie explained that appellee's termination would reduce costs.

Leckie testified below that he decided, at the time of appellee's termination, to put less emphasis on CAPP/MD while increasing the effort to market MULTI-CAPP. Further, Leckie stated that he had assumed appellee's duties concerning CAPP/MD since the termination.

Jack Lemon testified that Leckie discussed with him terminating appellee as a cost-saving measure but did not mention that Leckie planned to eliminate the CAPP/MD product line. Lemon further stated that CAPP/MD continued to make a profit for ITI and that he would not continue marketing the program if it were not a growth product.

Lemon also testified that he had taken on appellee in 1989 as a favor and that he had expected appellee to find other employment. Contrary to Leckie's testimony that appellee was terminated for cost-saving reasons, Lemon opined that appellee was discharged for poor performance. Lemon took this position even though appellee had earned substantial commissions while in ITI's employ.

Lemon claimed that appellee had been provided with the opportunity to make those sales because ITI was trying to help him.

Kay Lemon, ITI's director of human resources and corporate secretary, testified that after appellee's discharge, she had concerns about age discrimination. After consulting with the company's lawyers, she presented appellee with a termination agreement. It made the compensation already offered to appellee in the termination letter contingent upon appellee signing the agreement, which required him not to discuss his termination. Appellee refused to accept this agreement.

The jury returned a verdict in favor of appellee. Specifically, appellee was awarded $52,363.63 in compensatory damages, $63,945 in lost future wages, $18,214.29 in additional damages, and $200,000 in punitive damages on the age discrimination claim. He was awarded $52,363.63 on his wrongful discharge claim. The jury also found that appellee was entitled to reasonable attorney fees, which the court set at $50,000. After overruling ITI's motion for a new trial or judgment notwithstanding the verdict, the trial court entered judgment on the verdict. From that judgment, ITI brings this timely appeal.

ITI presents seven assignments of error for review, none of which have merit. In its first assignment of error, ITI argues that the trial court erred by denying its motions for a directed verdict and for judgment notwithstanding the verdict or, in the alternative, a new trial. It argues that appellee failed to present a prima facie case of age discrimination, that appellee failed to prove that ITI's reasons for his termination were pretextual, and that appellee failed to prove his breach-of-contract claim as a matter of law. We find this assignment of error is not well taken.

In ruling upon either a motion for a directed verdict pursuant to Civ.R. 50(A) or a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B), the court is not concerned with the weight of the evidence or the credibility of the witnesses. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19, syllabus. The court may grant either motion only if, after construing the evidence most strongly in favor of the nonmoving party, it finds that upon any essential issue reasonable minds could come to only one conclusion and that conclusion is adverse to that party. *Osler, supra,* at 347, 28 OBR at 411–412, 504 N.E.2d at 21–22; *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 91, 52 O.O.2d 376, 380–381, 262 N.E.2d 685, 692.

The granting or denial of a motion for a new trial pursuant to Civ.R. 59(A) is committed to the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Rohde, supra,* at paragraph one of the syllabus. The term "abuse of discretion" connotes more than an error

of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Rohde, supra,* at 87, 52 O.O.2d at 378–379, 262 N.E.2d at 689.

■ "[I]n ruling on a motion for new trial upon the basis of a claim that the judgment 'is not sustained by sufficient evidence,' the court must weigh the evidence and pass upon the credibility of the witnesses, not in the substantially unlimited sense that such weight and credibility are passed on originally by the jury but in the more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the manifest weight of the evidence." *Id.* at paragraph three of the syllabus.

ITI initially argues that appellee failed to establish a prima facie case of age discrimination. R.C. 4101.17 provides that "[n]o employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job * * *."

In *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439, syllabus, the court held:

"Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4101.17 in an employment discharge action, a plaintiff-employee must demonstrate (1) that he or she was a member of the statutorily protected class, (2) that he or she was discharged, (3) that he or she was qualified for the position, and (4) that he or she was replaced by, or that the discharge permitted the retention of, a person not belonging to the protected class."

Subsequently, in *Weiper v. W.A. Hill & Assoc.* (1995), 104 Ohio App.3d 250, 263, 661 N.E.2d 796, 805, this court observed:

"In 1993, the United States Supreme Court refined the burden of proof for a discrimination case. In *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, the court held that a plaintiff-employee has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. If a prima facie case is presented, the employer must articulate some legitimate, nondiscriminatory reason for the plaintiff's discharge. If the employer can articulate a nondiscriminatory reason, then the presumption of discrimination raised by the prima facie case is rebutted, and the plaintiff's burden is to prove that the employer's reason for discharge was false, and that discrimination was the real reason for discharge. *Id.* at 508, 113 S.Ct. at 2747, 125 L.Ed.2d at 415–416.

"Accordingly, because Ohio courts have seen fit to follow the federal model regarding proof of a *prima facie* case of discrimination, the burden has changed since *Kohmescher, supra,* so that it is now incumbent upon the employee to prove

not only that the employer's reason for discharge was false, but that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks, supra,* at 510–511, 113 S.Ct. at 2749, 125 L.Ed.2d at 418–419."

■ Specifically, ITI contends that appellee has failed to prove the fourth prong of the test of the *Kohmescher* syllabus: that he was replaced by, or that his discharge permitted the retention of, a person not belonging to the protected class. A person is "replaced" only when another employee is hired or reassigned to perform that person's duties. A person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Barnes v. GenCorp, Inc.* (C.A.6, 1990), 896 F.2d 1457, 1465, certiorari denied (1990), 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171.

■ All of the employees in the IME division were under forty years of age. Further, Leckie testified that he assumed appellee's responsibilities in regard to CAPP/MD in addition to his own. However, Leckie admitted that, beginning in April 1992, the number of "man months," the number of people working full-time on a project per month, that IME devoted to CAPP/MD began to increase. Leckie explained that these increases reflected work performed by co-op students and an independent contractor in Florida. Thus, the jury reasonably could have determined that Leckie did not assume appellee's duties in addition to his own and therefore that appellee was "replaced."

ITI next contends that even if appellee established a prima facie case of discrimination, he did not prove that ITI's stated reason for appellee's discharge was a pretext for age discrimination. In *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407, respondent Hicks, an African American, brought an action against his employer under Title VII of the Civil Rights Act of 1964, in which he alleged that his demotion and discharge were racially motivated. The district court found for the employer, holding that while the employer's stated reasons were not the real reasons for Hicks's discharge, Hicks had failed to carry his ultimate burden of proving that *race* was the determining factor in the employer's decision. However, the Court of Appeals for the Eighth Circuit reversed and remanded, holding that once Hicks had proven that the employer's reasons for termination were pretextual, Hicks was entitled to judgment as a matter of law. *St. Mary's, supra,* at 510–511, 113 S.Ct. at 2748, 125 L.Ed.2d at 417–418.

■ In reversing the court of appeals, the Supreme Court observed that under *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, when a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to produce evidence which would support a finding

that unlawful discrimination was not the cause of the employment action. However, the ultimate burden of persuading the factfinder that the employer intentionally discriminated against the plaintiff remains at all times with the plaintiff. *St. Mary's* at 507–508, 113 S.Ct. at 2747, 125 L.Ed.2d at 415–416, citing *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

■ In remanding the cause for further proceedings, the Supreme Court reasoned that Title VII of the Civil Rights Act of 1964, Section 2000e, Title 42, U.S.Code does not permit damages against employers who cannot prove a nondiscriminatory reason for adverse employment actions, but only against employers who are proven to have taken action for discriminatory reasons. Therefore, even if the employer's proffered reason for its action is unpersuasive or appears to be contrived, it does not necessarily establish that the plaintiff's proffered reason of race is correct. That remains a question for the trier of fact, subject to appellate review. *St. Mary's* at 523–524, 113 S.Ct. at 2756, 125 L.Ed.2d at 426–427.

■ Finally, the Supreme Court stated that the factfinder's disbelief of the employer's reasons for the adverse employment action, especially if that disbelief is coupled with a suspicion of duplicity, may, along with the elements of a prima facie case, be sufficient to demonstrate intentional discrimination. Accordingly, rejection of the employer's proffered reasons will permit the factfinder to infer the ultimate fact of intentional discrimination. *Id.* at 523–524, 113 S.Ct. at 2756, 125 L.Ed.2d at 426–427.

■ We hold that it was within the jury's province not to believe ITI's proffered reason for the termination. First, Leckie and Jack Lemon differed in their reasons for ITI's action. Leckie maintained that he was motivated to reduce IME costs. Jack Lemon testified that while Leckie discussed the matter of costs with him, appellee was terminated because of poor performance. Further, Lemon maintained this position even though appellee had made substantial sales of ITI products and services.

Second, appellee established that the CAPP/MD program was profitable for ITI while the MULTICAPP program was creating substantial losses. Despite Leckie's testimony that he planned to de-emphasize CAPP/MD, the amount of time expended on that program increased after appellee's termination.

Third, appellee's evidence showed that after appellee's termination, all employees remaining in the IME division were under forty years of age. While the younger employees were salaried, only ITI salespersons in the protected age classification were paid on commission.

Finally, ITI's human resource director, Kay Lemon, suspected that appellee's termination might raise an issue of age discrimination. Therefore, ITI sought to have appellee sign the termination agreement.

Accordingly, we reject ITI's position that its proffered reasons for terminating the appellee were not pretextual. The jury could infer from all the facts and circumstances presented at trial that ITI's action was discriminatory.

 The jury also determined that appellee's employment was not terminable at will and that ITI's actions violated an implied or express agreement as to termination. Unless the parties agree otherwise, either party to an oral employment-at-will agreement may terminate the employment relationship for any reason which is not contrary to law. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph one of the syllabus. The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the issue, can be considered by the trier of fact to determine the agreement's explicit and implicit terms concerning discharge. *Id.* at paragraph two of the syllabus. Additionally, the doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test to be applied is whether the employer should have reasonably expected its representations to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. *Id.* at paragraph three of the syllabus.

ITI's employment manual states that employment is terminable at will. However, both Leckie and Kay Lemon testified that it was ITI's policy to treat its employees fairly. Leckie agreed that it was also the company's policy to have good reason before terminating an employee. Additionally, if an employee was to be terminated, that employee should be given as much notice as possible. Leckie and Kay Lemon also testified that it was company policy to perform periodic performance reviews of its employees. Appellee testified that was he aware of these policies and that he had observed them in practice with other employees.

 The only reason given for appellee's discharge was that Leckie wished to reduce costs; Leckie never alleged that appellee's discharge was related to his performance. In his entire tenure with ITI, appellee never received a performance review and he was never told his performance was deficient. Though Leckie acknowledged he could have given appellee more notice, he told appellee that his position was being eliminated and that appellee should clean out his desk and leave immediately. Thus, there was evidence from which the trier of fact could reasonably conclude that ITI had breached an implied agreement not to fire an employee without just cause and to treat its employees fairly.

Appellee's duties with ITI included the sale of maintenance contracts on the ITI programs he sold for which he received a commission. In the letter of termination, ITI stated that it would pay appellee's commission on these contracts only until December 31, 1991. Appellee's claimed damages included failure to pay his commissions on the maintenance contracts beyond this date.

ITI maintains that appellee failed to prove that ITI agreed to pay these commissions beyond December 31, 1991. However, Leckie testified that during appellee's term of employment in the IME division he did not discuss with appellee the fact that his maintenance contract commissions would cease once he left ITI's employ. Further, ITI offered no evidence to support a finding that it was industry practice to do so. Consequently, we find this case to be distinguishable from this court's decision in *Weiper, supra.* There, the employer offered evidence to show that it was the custom of the industry not to pay postemployment commissions. Accordingly, we hold that the jury could have reasonably concluded that appellee was entitled to receive his commissions on the maintenance contracts after his termination from ITI.

Appellee's complaint also alleged that his discharge violated Ohio's public policy because ITI discriminated against him due to his age, which is specifically prohibited by R.C. 4101.17. See *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981. ITI contends that the trial court prejudicially permitted evidence, jury instructions and argument regarding whether appellee was an at-will employee. Since the jury did not return a verdict on the public-policy claim, we perceive no prejudice. Further, we have rejected a similar argument during our analysis of appellee's contract claims. Accordingly, ITI's first assignment of error is overruled.

In its second assignment of error, ITI asserts that the trial court erred by submitting the issue of punitive damages to the jury. It argues that appellee did not present sufficient evidence of actual malice. We find this assignment of error is not well taken.

Punitive damages may be awarded upon a showing of actual malice. *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 601, 640 N.E.2d 159, 162. Actual malice is (1) that state of mind characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. A jury verdict on punitive damages which is not the result of passion and prejudice or prejudicial error should not be reduced on appeal. *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 543 N.E.2d 464, syllabus, overruled on other grounds in *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, paragraph two of the syllabus,

certiorari denied *sub nom. Figgie v. Moskovitz* (1994), 513 U.S. ——, 115 S.Ct. 668, 130 L.Ed.2d 602.

ITI contends that appellee failed to prove that anyone in its employ acted with actual malice. However, as can be seen from our discussion of the first assignment of error, we conclude that the jury could reasonably have found that ITI's employees consciously disregarded appellee's right not to be subjected to age discrimination. ITI's second assignment of error is overruled.

In its third assignment of error, ITI states that the trial court erred by instructing the jury that appellee could establish "pretext" by showing that ITI's proffered reason for discharging him was "unworthy of credence." It argues that to establish "pretext," the plaintiff must show both that the proffered reason was false and that discrimination was the real reason. We find this assignment of error is not well taken.

The trial court instructed the jury:

"There are different ways a plaintiff alleging age discrimination can establish pretext and have sufficient proof of age discrimination. A plaintiff * * * may show that the discriminatory reason, for example age, actually motivated defendant's actions notwithstanding [the] stated reason.

"Alternatively, *plaintiff can establish pretext by showing that the stated reason is unworthy of credence.* A pretext can also be shown if the employer's business judgment was ridden [*sic* ] with errors that the employer couldn't have honestly relied upon it.

"If the plaintiff establishes pretext, you may conclude that his age was a determining factor in his termination." (Emphasis added.)

 ITI correctly notes that similar language was rejected by the court in *St. Mary's, supra,* 509 U.S. at 517–519, 113 S.Ct. at 2752–2753, 125 L.Ed.2d at 421–424. However, ITI did not object to the instruction of which it now complains. Therefore, we will not reverse on that basis unless we determine that the instruction rises to the level of plain error. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St.2d 207, 209, 24 O.O.3d 316, 317, 436 N.E.2d 1001, 1003. The plain error doctrine is used in civil matters only under exceptional circumstances to prevent a manifest miscarriage of justice. *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327–328, 480 N.E.2d 794, 800.

 We hold that the trial court's instruction on "pretext" did not deprive ITI of a fair trial. The record discloses that the trial court next instructed the jury as follows:

"A pretext is a purpose or motive alleged * * * in order to conceal the real intention or state of affairs. *It is not enough for the plaintiff to show that the reason given for the elimination of plaintiff's position was a pretext.*

"The plaintiff must establish that the real reason concealed by such pretext was discrimination by reason of age.

"*In order to prove his claim, the burden is upon the plaintiff to establish by a preponderance of the evidence that he was discharged because of his age.* While there may be more than one factor in the decision to discharge the plaintiff, he must prove that age was a determining factor in that decision.

"You are not to second-guess the defendants' [*sic*] business judgment in deciding to eliminate plaintiff's position, that is, the issue for you to decide is not whether or not defendant made the best or even the right business decision. *You are to decide only whether the defendants'* [*sic*] *decision to eliminate the plaintiff's position was motivated by age.*" (Emphasis added.)

These instructions are consistent with the ruling of *St. Mary's* that the ultimate burden to prove discrimination remains with the plaintiff at all times. Accordingly, we overrule ITI's third assignment of error.

In its fourth assignment of error, ITI states that the trial court erred by allowing appellee to present evidence in support of his employment contract claims. We overrule this assignment for the reasons stated in our disposition of those claims under ITI's first assignment of error.

In its fifth assignment of error, ITI states that the trial court erroneously permitted appellee to introduce testimony regarding the release proffered by ITI to appellee. It argues that the release was an offer of compromise and therefore testimony about it should have been excluded under Evid.R. 408. We find this assignment of error is not well taken.

Evid.R. 408 provides:

"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise *a claim which was disputed as to either validity or amount,* is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible." (Emphasis added.)

Kay Lemon caused the agreement to be prepared and tendered to appellee after his discharge because she suspected that the appellee's age might become an issue. However, at the time that the agreement was tendered, no claim by appellee was pending. Further, the terms of compensation set forth in the agreement were matters to which, the jury found, appellee was entitled. The

termination agreement was not an "offer of compromise" as that term is used in Evid.R. 408, see *South v. Toledo Edison Co.* (1986), 32 Ohio App.3d 24, 28–29, 513 N.E.2d 800, 805, and ITI's fifth assignment of error is overruled.

In its sixth assignment of error, ITI contends that the trial court erred by failing to give its requested jury instruction on the definition of "replacement." It argues that its proposed instruction was consistent with federal and Ohio law and was critical to the jury's determination of whether appellee had made out a prima facie case. We find this assignment of error is not well taken.

ITI requested the trial court to instruct the jury as follows:

"A person is 'replaced' only when another employee is hired or assigned to perform that person's duties. A person is *not* replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." (Emphasis *sic.*)

The trial court instructed the jury that for appellee to present a prima facie case, he must show "that he was replaced by a person who did not belong to the protected class, or that the termination permitted the retention of a person who did not belong to the protected class."

In considering the appropriateness of a jury instruction, a reviewing court must view the instructions as a whole. The trial court does not commit reversible error if the instructions are sufficiently clear to enable the jury to understand the law as applied to the facts. *Schade, supra,* 70 Ohio St.2d at 210, 24 O.O.3d at 317, 436 N.E.2d at 1003; *Harman Group Corporate Fin., Inc. v. Academy of Medicine of Columbus & Franklin Cty.* (1994), 94 Ohio App.3d 712, 721, 641 N.E.2d 785, 791. The trial court need not give a party's requested instructions to the jury verbatim; the court may use its own language to communicate the same legal principles. *State v. Nelson* (1973), 36 Ohio St.2d 79, 65 O.O.2d 222, 303 N.E.2d 865, paragraph one of the syllabus, overruled on other grounds in *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583, paragraph one of the syllabus. Moreover, if the court's instruction correctly states the law pertinent to the issues raised in the case, the court's use of that instruction will not constitute error, even if the instruction is not a full and comprehensive statement of the law. *Henderson v. Spring Run Allotment* (1994), 99 Ohio App.3d 633, 638, 651 N.E.2d 489, 492–493. Here, the trial court's instruction on replacement is verbatim from the syllabus of *Kohmescher, supra.* It is a correct statement of law which did not mislead the jury. Accordingly, we hold that the trial court did not err by declining to give ITI's proposed instruction on this issue and ITI's sixth assignment of error is overruled.

In its seventh, and final, assignment of error, ITI states that the trial court erred by permitting evidence concerning ITI's termination of Prentiss Yates. It argues that this evidence was irrelevant to the issue of whether ITI discriminated against appellee. We find no merit to this assignment of error.

During the appellee's case-in-chief, Prentiss Yates testified concerning his employment with ITI. Yates joined ITI as a salaried and commissioned salesperson in 1986, at forty-six years of age. The terms of his employment were similar to those of the appellee, including the right to a bonus after achieving $500,000 in sales. Yates testified that in 1989, he reached $1,000,000 in sales. The following year, Yates achieved $2,000,000 in sales and Jack Lemon retracted the bonus agreement. In August 1991, Lemon terminated Yates for the reason that "sales in the foreseeable future will not support [his] efforts."

Evid.R. 404(B) provides:

"Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

We conclude that the trial court did not abuse its discretion by admitting Yates's testimony because it was probative of ITI's motive, intent, and knowledge in dealing with older employees. See *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. Accordingly, we overrule ITI's seventh assignment of error and affirm the judgment of the court of common pleas.

*Judgment affirmed.*

DOAN, P.J., and PAINTER, J., concur.