Before addressing Rolsen's employment claims, I would like to clarify my understanding of the "actual malice" standard in defamation cases. The actual malice required for liability in defamation cases is different from the type of malice required to prove entitlement to punitive damages in other types of cases and has nothing to do with spite or ill will. In the context of a defamation claim, a person acts with actual malice when the person acts with "knowledge that the statements are false or with reckless disregard of whether they are false or not."[1]
While spite or ill will might provide evidence of a defendant's reckless disregard for the truth of a statement, a plaintiff is not required to show the existence of spite or ill will to defeat a claim of privilege. In this case, Rolsen presented no evidence either that Lazarus either knew that the statements were not true or that it acted recklessly in that regard. I agree with the majority's disposition of that issue.
Turning to the employment-law issues, I write separately to emphasize my belief that the existence of a disclaimer in a handbook will not always defeat an implied-contract claim based on conduct or representations outside of the handbook.
In Wing v. Anchor Media, Ltd. of Texas, the Supreme Court of Ohio held that "[a]bsent fraud in the inducement, a disclaimer in an employee handbook stating that employment is at will precludes an employment contract other than at will based upon the terms ofthe employee handbook."[2] In Atkinson v. InternationalTechnegroup, Inc.,[3] the employment manual stated specifically that employment was at will. However, managers from the company testified that the company had a policy to treat employees fairly and not to discharge employees except for a good reason. The managers practiced this policy, and the employee was aware of its application in specific circumstances. In Atkinson, this court upheld the jury verdict in the plaintiff's favor on his implied-contract claims despite the disclaimer.
Thus, even if a handbook contains a disclaimer, the disclaimer will preclude only those contract claims based on the terms of the handbook and will not preclude a claim of implied contract based on the course of dealing between the parties or other facts and circumstances reflecting the implicit and explicit terms of an employee's employment. In this case, apart from the handbook, Rolsn only presented the statements of a few employees that Lazarus did not make personnel decisions without good reason. Her evidence fell far short of demonstrating the type of policy that existed in Atkinson despite the disclaimer in the handbook. Her evidence failed, as a matter of law, to show that fair treatment and just-cause discharge were implied conditions of her employment.
Likewise, a disclaimer in an application or a handbook should not preclude a plaintiff from establishing a claim of promissory estoppel in an appropriate case. The basis of a claim for promissory estoppel is detrimental reliance. The elements are distinct from those of a contract claim. The court stated in Wing
that the existence of a disclaimer in a handbook precludes acontract claim "based upon the terms of the employeehandbook."[4] I do not believe that the disclaimer should be extended to preclude non-contract claims based on conduct or representations made outside of the handbook.[5]
In this case, the only promise on which Rolsen allegedly relied was the silence of the manager when Rolsen showed her the watch that she was wearing. Her evidence was insufficient, as a matter of law, to demonstrate the type of reasonably specific promise or statement that is required for an estoppel claim. I do not think that we need to reach the question of whether her reliance was reasonable. However, since the majority has addressed this issue, I am concurring separately to state my disagreement with the proposition that Rolsen's reliance was, as a matter of law, unreasonable because of the disclaimers in the Lazarus handbooks.
Finally, I disagree with the statement of the majority that "every company, presumably, does not take personnel actions without good reason." With the numerous decisions in this state alone upholding jury or bench awards on discrimination claims, the existence of employers like the one in Wing who terminate employees who call attention to their employer's illegal acts, and the policy in this state of upholding the right of an employer to terminate an employee for any reason or no reason, I cannot agree that "every employer" makes personnel decisions for good reasons. The presumption used in employment cases like this one is not that the employer discharged the employee for a good reason, but that the reason, whether good or bad, is irrelevant to the lawfulness of the decision. Even if the employer in this case had a good reason to terminate Rolsen's employment, the majority's statement is far too broad.
For the foregoing reasons, I separately concur in this case.
[1] See Hahn v. Kotten (1975), 43 Ohio St.2d 237,331 N.E.2d 713, paragraph two of the syllabus; Jacobs v. Frank (1991),60 Ohio St.3d 111, 573 N.E.2d 609, paragraph two of the syllabus; A B-Abell Elevator Co. v. Columbus /Central Ohio Bldg. Constr.Trades Council (1995), 73 Ohio St.3d 1, 651 N.E.2d 1283; see, also, Gureasko v. Bethesda Hosp. (1996), 116 Ohio App.3d 724,689 N.E.2d 76.
[2] (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph one of the syllabus (emphasis added).
[3] (1995), 106 Ohio App.3d 349, 666 N.E.2d 257.
[4] (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph one of the syllabus.
[5] See Randleman v. Dick Masheter Ford, Inc. (Aug. 22, 1991), Franklin App. No. 91AP-201, unreported. (disclaimer in application bars claim of implied contract based on application, but not claim of estoppel based on other promises).