JOURNAL ENTRY AND OPINION
Defendant-appellant Trini Bolling (d.o.b. March 20, 1974; Bolling) appeals from his jury trial conviction and sentence on two counts of assaulting a police officer in violation of R.C. 2903.13 (which are fourth degree felonies), one count of preparation of drugs for sale in violation of R.C. 2925.07 (which is a fourth degree felony), and one count of possession of criminal tools in violation of R.C. 2923.24 (which is a fifth degree felony).[1] For the reasons adduced below, we vacate the conviction and sentence, and reverse and remand for a new trial.
A review of the record on appeal indicates that the offenses herein occurred in the early evening hours of March 23, 2000, in the vicinity of East 40th Street and Outhwaite Avenue in the City of Cleveland. Cleveland Police Officer Chris Ricketti, who was a passenger in a marked patrol car, and his partner, Cleveland Police Officer Brian Chetnik, who was driving the patrol car, observed Bolling driving erratically and squealing his tires traveling northbound on East 40th Street. Bolling made a turn into a church parking lot, drove around the back of the lot, and then pulled out onto East 40th Street, continuing northbound on East 40th Street. Based on this observation of a traffic violation in progress, the officers activated their overhead emergency lights on their patrol car, pulled up behind the suspect vehicle, and stopped Bolling's vehicle. As Officer Chetnik approached the suspect vehicle on the driver's side and Officer Ricketti on the passenger side, Bolling rolled down his passenger door window. The officers smelled the strong odor of marijuana smoke. As the officers were conversing between themselves after speaking briefly to Bolling, and while performing a computer check on the license plate of the suspect vehicle and the driver's license, the officers observed Bolling making furtive movements inside the suspect vehicle in the form of leaning his body forward; this movement made the officers nervous. Officer Ricketti returned to the driver's side of the suspect vehicle and, based on the odor of marijuana, Bolling was asked to step out of the suspect vehicle. Officer Ricketti then proceeded to perform a protective pat-down search of Bolling's person at the rear of the suspect vehicle. As Officer Ricketti patted down one of Bolling's trouser pockets, Bolling attempted to flee, but was stopped by Officer Ricketti. At that point, Bolling became combative and profane, telling Officer Ricketti to [G]et the fuck off, get off me, Tr. 17, as Bolling swung at the officer's arms. As this was happening, a crowd of approximately two hundred people was gathering around the scene. Officer Ricketti's partner called for back-up help. Both of the officers now grabbed Bolling in an attempt to subdue him; Bolling continued to swing his arms at the officers in an attempt to free himself. Both officers were struck by Bolling during this melee. Bolling next threatened the officers, saying, I'm going to shoot you mother fuckers. Let me go. Tr. 17-18.
While the original two officers tussled with Bolling, Cleveland Police Officer Joseph DiGregorio and Detective Bruce Garner arrived on the scene as backup. Officer DiGregorio immediately joined in the ongoing struggle to subdue Bolling, and was kicked by Bolling several times. In the effort to subdue Bolling, the police used pepper spray on Bolling without success. Detective Garner then joined in the fight, applying non-deadly force in the form of his asp baton to Bolling, again without success. All the while, the crowd was becoming a factor, urging Bolling to beat up the police. Bolling kept fighting, kicking, screaming, and spitting on the officers. Another officer, Cleveland Police Officer Tucker, then arrived on the scene as back up and joined in the struggle. Despite the efforts of Bolling, the five officers ultimately subdued him. Subsequent to Bolling being brought under control and handcuffed, Cleveland Police Officer Charles Lane and his partner arrived on the scene and, after patting Bolling down, Bolling was placed in the back seat of Officer Lane's patrol car. Officer Lane testified that he could smell marijuana and PCP on Bolling. Officer Lane and his partner, Cleveland Police Officer Garcia, then transported Bolling to Charity Hospital for treatment for the pepper spray irritant which was on his face. While in the patrol car on the way to the hospital, Officer Lane testified that Bolling stated, I hate you white mother fucker. You all disrespecting me for the last time. If I had a gun I would have killed you, and I don't care what you bitches do. When I get out, I'm going to put some ice on my chest. You two are dead. Tr. 215. Officer Lane testified that ice is a slang term for a bullet proof vest. Tr. 215-216.
While being treated at the hospital, Bolling continued his obnoxious and threatening behavior, spitting water on the police and hospital staff. Following his treatment at the hospital, Bolling was transported to police headquarters where, while performing an inventory of Bolling's effects, the police found a total of twelve bags of marijuana in various pockets. This marijuana, upon further scientific analysis, revealed a total weight of 290.62 grams.[2] The police also found in the personal inventory currency in the amount of $136, a cellular telephone, and an electronic pager; the police testified that these items are commonly used to assist in the selling of drugs. While being processed at the jail, Bolling continued his tirade of spitting on officers, kicking at officers, and issuing verbal threats of retaliation with deadly force against his captors.
The only witness to testify for the defense was Mr. Perry McCoy, a bystander who allegedly observed the struggle between the officers at the scene of the arrest. Mr. McCoy, who did not come forward with information to the police prior to appearing in court in this case, testified that Bolling was not resisting his arrest, did not attack any officers, and was being beaten by the police after they had restrained Bolling. Mr. McCoy admitted on cross-examination that he has a felony conviction for being in possession of a stolen automobile and that he met Bolling while the two were in county jail together a few months prior to the commencement of Bolling's trial on the charges herein.
The jury returned its verdict and, subsequent to the preparation of a pre-sentence investigation report, the trial court sentenced Bolling on August 29, 2000, to the following: (1) 15 months on each of the two assault counts, each term to run consecutive to the other; (2) 12 months on the drug count, to run consecutive to the sentences for the assault counts; (3) 10 months on the possession of criminal tools count, to run concurrent to the other sentences; and, (4) payment of court costs. Thus, Bolling's term of imprisonment was 42 months.
Bolling presents three assignments of error.
The first assignment of error provides:
 I THE TRIAL COURT ERRED BY ORDERING THE DEFENDANT TO SERVE CONSECUTIVE SENTENCES WITHOUT MAKING THE REQUISITE FINDINGS ON THE RECORD.
Before imposing consecutive sentences, the sentencing court is required to make the following findings on the record pursuant to R.C. 2929.14(E)(4):
 1) That consecutive sentences are necessary to protect the public from future crime or to punish the offender;
 2) that the sentences are not disproportionate to the seriousness of the offender's conduct;
 3) that the sentences are not disproportionate to the danger the offender poses to the public; and
 4) either a) that the offenses were committed while the offender was awaiting trial or sentencing, or was otherwise under sanctions imposed for a prior offense;
 b) that the harm caused was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct; or
 c) that the offender's criminal history shows a need to protect the public from future acts by the offender.
State v. DeAmiches (Mar. 1, 2001), Cuyahoga App. No. 77609, unreported, 2001 Ohio App. LEXIS 768 at 26; see, also, State v. Edmonson(1999),86 Ohio St.3d 324; State v. Durden (May 17, 2001), Cuyahoga App. No. 78068, unreported, 2001 Ohio App. LEXIS 2180 at 5-7.
In addition to the above-mentioned mandatory findings, the sentencing court must also place on the record its reasons for these findings. DeAmiches, supra, citing R.C. 2929.19(B)(2)(c). See, also, State v. Gonzalez (Mar. 15, 2001), Cuyahoga App. No. 77338, unreported, 2001 Ohio App. LEXIS 1185 at 23-29 (findings, and reasons for the findings, are required for the imposition of consecutive sentences; mere recitation of the defendant's prior criminal record by the trial court is not sufficient to satisfy the statement of reasons under R.C.2929.19(B)(2)(c); reasons mean the trial court's basis for each of the findings).
The state concedes that the mandatory findings, and reasons for those findings, are absent from the record. Accordingly, the entire sentence is vacated and the matter must be remanded for re-sentencing in its entirety. See State v. Bolton (May 3, 2001), Cuyahoga App. No. 78034, unreported, 2001 Ohio App. LEXIS 1980; R.C. 2953.08(G)(1).
The first assignment of error is affirmed.
The second assignment of error provides:
 II THE DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY WHEN THE TRIAL COURT RESPONDED IMPROPERLY TO A WRITTEN QUESTION BY THE JURY FORE PERSON.
The record reflects that the jury was given the case sometime during the morning session of Friday, August 18, 2000. At some point during the jury deliberations on the morning of Monday, August 21, 2000, the trial court received the following handwritten question from the jury foreman on a yellow page from a legal pad, Must we have a decision on all counts, or can one or two counts be undecided?. The trial court, without advising the parties of this communication from the jury or the trial court's response, answered the jury question by writing on the same communication it had received from the jury, A decision is required on all counts. Continue to deliberate to the best of your ability. The trial court announced the verdict from the jury on the afternoon of August 21, 2000.
Bolling argues that this supplemental instruction by the trial court was incorrect and unfairly prejudicial as a modified Howard charge in that the instruction erred when it required a decision by the jury on each count. See State v. Howard (1989), 42 Ohio St.3d 18 . Appellant believes that the supplemental charge improperly emphasized the necessity to reach a verdict on each count, thereby coercing the guilty verdicts herein.
In Howard, the Supreme Court of Ohio was concerned with the jury instruction promulgated in U.S. v. Allen (1896), 164 U.S. 492,41 L.Ed. 528, 17 S.Ct. 154. The Howard court was particularly concerned that the Allen instruction advised jurors that a verdict must be reached, depriving either the state or the defendant of the possibility of a hung jury. Howard, 42 Ohio St.3d at 21. The Howard court was also concerned that the Allen instruction advised only those jurors in the minority vote to reconsider their position in light of the fact that a majority of the jurors are persuaded to the opposite conclusion. Id. Under Howard, the trial court may give a balanced and neutral supplemental instruction urging a jury to make a reasonable effort to decide the case, if they can conscientiously do so, when it is determined by the trial court that the jury is deadlocked. Howard, supra, 42 Ohio St.3d at 19, 24. The decision to give a Howard charge is reviewed under an abuse of discretion standard. State v. Long (Oct. 12, 2000), Cuyahoga App. No. 77272, unreported, 2000 Ohio App. LEXIS 4778 at 26. An abuse of discretion means more than an error of law or judgment; instead, it implies that the trial court's decision is unreasonable, arbitrary, or unconscionable. Atkinson v. International Technegroup, Inc. (1995), 106 Ohio App.3d 349, 358.
In the present case, we see no abuse of discretion in the trial court giving a supplemental instruction. The jury, during its second day of deliberations, adequately expressed its concern about deciding some of the counts placed before it when it sent its communication to the trial court. In response, the court instructed the jury to make a decision on all counts. This admonition, that the jury was required to decide each count, is precisely one of the major concerns surrounding the dynamite charge contained in Allen and which the Howard court sought to address. Howard, 42 Ohio St.3d at 21. Without knowing which counts the jury was having differences over, it is impossible to say that the outcome of the trial would not have been different but for the error in the supplemental instruction. Accordingly, the convictions must be vacated and a new trial is warranted.
The second assignment of error is affirmed.
The third assignment of error provides:
 III THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO NUMEROUS INSTANCES OF PROSECUTORIAL MISCONDUCT AT TRIAL AND SENTENCING.
By virtue of the first and second assignments of error, this third assignment of error is moot and need not be discussed at this time. See App.R. 12(A)(1)(c).
The third assignment of error is overruled.
Reversed and remanded for a new trial.
This cause is reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 __________________________________ JAMES D. SWEENEY, PRESIDING JUDGE:
PATRICIA A. BLACKMON, J., CONCURS; COLLEEN CONWAY COONEY, J., CONCURS WITH SEPARATE CONCURRING OPINION.
[1] Bolling was acquitted on one count of assaulting a police officer.
[2] Detective Garner testified that the amount of marijuana, which he claimed had a street value of approximately $1,200, and the way in which it was divided and packaged indicated that the drugs were packaged for distribution or shipment. Tr. 266-267.