MELLINO, Appellees and Cross–Appellant, et al.

v.

CHARLES KAMPINSKI CO., L.P.A., Appellant and Cross–Appellee, et al.

[Cite as <em>Mellino v. Kampinski Co., L.P.A.,</em> 163 Ohio App.3d 163, 2005-Ohio-4292.]

Court of Appeals of Ohio,<br>Eighth District, Cuyahoga County.

No. 85090.

Decided Aug. 18, 2005.

Sonkin & Koberna Co., L.P.A., Mark R. Koberna, and Stephen B. Doucette, for appellee and cross-appellant.

Charles Kampinski, for appellant and cross-appellee.

MICHAEL J. CORRIGAN, Judge.

{¶ 1} A jury awarded appellee/cross-appellant, Christopher Mellino, $620,882 on his claim for breach of an oral employment agreement against his former law firm, appellant/cross-appellee, Charles Kampinski Co., L.P.A. The law firm appeals, and Mellino cross-appeals. Finding merit in Mellino's first cross-assignment of error, we reverse and remand the matter to the trial court for a new trial.

## I. THE RELATIONSHIP

{¶ 2} Mellino was an attorney at the law firm for 17 years. In those 17 years, the law firm mainly consisted of Mellino and Charles Kampinski[1] and the law

---

**1.** In addition to other hired staff and an "of counsel" arrangement, the law firm employed a third attorney.

practice primarily focused on representing plaintiffs in medical-malpractice claims. When Mellino started at the law firm, he was paid wages equal to one percent of the attorney fees received by the firm. Each year he continued to work at the law firm, Mellino received an additional one percent of the attorney fees received by the firm.[2] By way of example, in his 17th year at the law firm, Mellino received 17 percent of the attorney fees the law firm received.

{¶ 3} Over the 17 years, the relationship between Kampinski and Mellino morphed from a clear employer-employee relationship into something more opaque. Although the law firm was registered with the Secretary of State as a corporation with Kampinski as the sole owner and shareholder, the name of the law firm was changed in 1996 to "Kampinski & Mellino Co., L.P.A." (the letterhead and name on the office door were also changed), and the two men called each other "partner."

{¶ 4} Kampinski, the self-proclaimed "trial guy," began to spend more time physically out of the office and away from the law firm for weeks, sometimes months, out of the year and entrusted Mellino with the responsibilities of working up the cases, assisting the clients with discovery, and drafting motions and briefs prior to trial. Although Kampinski checked up on the law firm at numerous times throughout the day while he was away, Mellino appeared to be in charge of the day-to-day operations of the law firm. Mellino testified that he hired and fired employees on behalf of the law firm, signed contingent-fee contracts with clients on behalf of the law firm, and had the authority to sign checks on behalf of the law firm.

{¶ 5} A line of credit with National City Bank, which Mellino signed, was taken out by the "partnership" of Kampinski & Mellino Co., L.P.A., for the purpose of paying the litigation expenses for the cases at the beginning of the year. Although Mellino was paid as an employee as shown by the law firm's issuing a W-2 Form to Mellino, Mellino's wages were computed on a percentage of the net revenue of the law firm. Mellino's wages constituted 17 percent of the attorney fees received by the law firm less 17 percent of estimated expenses for the law firm. For example, Mellino was responsible for 17 percent of the estimated expenses of the law firm including rent, utilities, telephone bills, and the salary of the third attorney. Although Mellino did not write a check to the law firm for his share of the expenses, it was directly deducted from his paycheck.

{¶ 6} In November 2001, Mellino left the law firm and established the Mellino Law Firm, L.L.C. Mellino testified that he chose to leave because he felt Kampinski took a case away from him that he was prepared to try and because

---

2. Mellino was also entitled to be paid one-third of the law firm's contingency fee of any case that he originated.

he had learned of sexual harassment allegations made by the law firm receptionist against Kampinski. After Mellino gave his notice that he was leaving the law firm and did not wrap up his workload to Kampinski's satisfaction, Kampinski changed the locks on the office door and changed the law firm's name back to "Charles Kampinski Co., L.P.A."

## II. THE LAWSUIT

{¶ 7} Thereafter, Mellino, on behalf of himself and his newly formed law firm, filed suit against the law firm and Kampinski alleging, inter alia, that the law firm and/or Kampinski had breached the partnership agreement by failing to pay Mellino his 17 percent of all attorney fees received by the law firm for cases that were commenced in the year 2001, as well as his share of any cases Mellino originated. In the alternative, Mellino alleged that Kampinski had breached the oral employment agreement by failing to pay Mellino his 17 percent of the 2001 cases. The law firm and Kampinski filed a counterclaim against Mellino and his newly formed law firm alleging that Mellino had breached his duty of loyalty to the law firm, interfered with business contracts when he planned to take clients to his newly formed law firm, and converted the law firm's property (clients) for his personal use (his newly formed law firm).

{¶ 8} Prior to trial, Mellino's newly formed law firm voluntarily dismissed its claims without prejudice, leaving only Mellino as plaintiff. At trial, the trial court directed a verdict in favor of Kampinski and his law firm on Mellino's breach-of-partnership claims. In addition, the parties stipulated to dismissing Mellino's claims of interference with business/contractual relations, unjust enrichment, quantum meruit, and injunctive relief against Kampinski and his law firm. Thus, the remaining claims tried to the jury were Mellino's claim against the law firm as to breach of the alleged oral employment agreement and the counterclaim alleged by Kampinski and the law firm.

{¶ 9} The jury found in favor of Mellino on his claim for breach of the oral employment agreement against the law firm and awarded Mellino $620,882 in damages. The jury also found in favor of Mellino on the law firm and Kampinski's counterclaim. After the trial, the law firm filed a combined motion for judgment notwithstanding the verdict and for a new trial. Mellino also filed a motion for prejudgment interest. Both motions were denied by the trial court.

{¶ 10} On appeal, the law firm cites two assignments of error. First, the law firm asserts that the trial court erred when it failed to grant a motion for directed verdict on Mellino's claim for postemployment wages. Second, the law firm asserts that the trial court erred when it failed to grant the law firm's motion for a new trial.

{¶ 11} Mellino cross-appeals, citing three cross-assignments of error. First, he contends that the trial court erred when it granted the directed verdict against him on his partnership claims. Second, he contends that the trial court erred when it granted a motion in limine against him as to testimony regarding sexual-harassment allegations made by the law firm's receptionist. Finally, he contends that the trial court erred when it denied his motion for prejudgment interest.

### III. THE LAW FIRM'S FIRST ASSIGNMENT OF ERROR

{¶ 12} In the law firm's first assignment of error, it contends that the trial court should have granted its motion for directed verdict because, as a matter of law, Mellino, whom the jury found to be an employee of the law firm, was not entitled to any postemployment wages. The law firm argues that Kampinski never agreed to pay Mellino wages after he left his employment with the law firm and that any alleged oral agreement for postemployment wages violates the Statute of Frauds, as the typical medical-malpractice case (and the fees it generates) is not resolved within one year. The law firm's arguments, however, are without merit.

{¶ 13} Civ.R. 50(A)(4) provides:

{¶ 14} "When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

{¶ 15} Typically, at-will employees are not entitled to postemployment wages. Absent some colorable evidence that the employer assented or agreed to pay his employee wages after he terminated his employment, the employee's subjective expectations do not constitute an implied contract to receive such wages. *Weiper v. W.A. Hill & Assocs.* (1995), 104 Ohio App.3d 250, 258, 661 N.E.2d 796; cf. *Atkinson v. Internatl. Technegroup* (1995), 106 Ohio App.3d 349, 362, 666 N.E.2d 257 (holding that reasonable minds could have found that the employee was entitled to postemployment wages because the employer failed to produce any evidence that it was the industry custom to cease paying commissions once employees left the employment).

{¶ 16} Here, there was testimony upon which reasonable minds could differ as to whether Kampinski agreed to pay Mellino his 17 percent of the 2001 cases after Mellino left the law firm. For instance, Kampinski testified that he wrote a letter to Mellino informing him that he was willing to pay him for certain

cases that Mellino worked on throughout 2001, despite testifying that he was not required to do so. What may have been deemed only a nice gesture by Kampinski could have been construed by reasonable minds as at least a colorable agreement to pay Mellino postemployment wages.

{¶ 17} Moreover, in viewing the evidence in the light most favorable to Mellino, Kampinski's agreement to pay Mellino his 17 percent (or any wages) after he left the law firm does not violate the Statute of Frauds. Although the attorney fees obtained by the law firm were contingent upon a resolution favorable to the client and the typical medical-malpractice case does not resolve within one year, it is entirely possible that a case could be resolved and Kampinski's agreement to pay Mellino could be performed within one year. This possibility, construed by reasonable minds, takes Kampinski's agreement outside of the Statute of Frauds. Thus, the trial court did not err in denying the law firm's motion for directed verdict on Mellino's claim for postemployment wages, and the law firm's first assignment of error is overruled.

## IV. MELLINO'S FIRST CROSS–ASSIGNMENT OF ERROR

{¶ 18} In his first cross-assignment of error, Mellino argues that the trial court erred in granting the law firm and Kampinski's motion for directed verdict on his breach-of-partnership claims. As argued by Mellino, reasonable minds could have differed as to whether there was a partnership between Kampinski and Mellino. We find Mellino's argument well taken.

{¶ 19} This court, in reviewing the trial court's decision to grant the law firm and Kampinski's motion for directed verdict, must construe the evidence most strongly in favor of Mellino and determine whether reasonable minds could have found the existence of a partnership. R.C. 1775.06 provides rules for determining whether a partnership exists:

{¶ 20} "In determining whether a partnership exists, these rules apply:

{¶ 21} "* * *

{¶ 22} "(D) The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

{¶ 23} "(1) As a debt by installments or otherwise;

{¶ 24} "(2) As wages of an employee or rent to a landlord;

{¶ 25} "(3) As an annuity to a widow or representative of a deceased partner;

{¶ 26} "(4) As interest on a loan, though the amount of payment vary with the profits of the business;

{¶ 27} "(5) As the consideration for the sale of good will of a business or other property by installments or otherwise."

{¶ 28} In addition, whether the parties agreed to be partners and carry on in the usual way of partners is a determination that requires a factual finding that "the participants in a business venture have expressly or impliedly authorized the other participants to act on behalf of the partnership." *Allen v. Niehaus* (Dec. 14, 2001), Hamilton App. Nos. C–000213 and C–000235, 2001 WL 1589169. A partnership is created when the parties have acted in such a way that a partnership arises by operation of law. The relevant inquiry is "not whether the parties intend that the law describe their relationship as a partnership, but rather whether they intend a relationship that includes the essential elements of partnership." Id.

{¶ 29} Here, there was evidence upon which reasonable minds could have concluded that a partnership existed. It is undisputed that Mellino received a 17 percent share of the attorney fees received by the law firm. While the law firm contends that Mellino's share was nothing more than wages as an employee, deducted from Mellino's wages were his share of the law firm's expenses, such as rent and utilities. Most employees do not contribute in any way to the overhead expenses of their employer. Most employees are also not authorized to bind their employer. Here, there was testimony that Mellino signed contingent-fee contracts with the clients and signed checks on behalf of the law firm. Most employees have no authority to hire and fire other employees—Mellino testified that Kampinski gave him such authority. When Kampinski was out of the office, Mellino was "in charge." Mellino, with Kampinski, signed a line-of-credit application from National City Bank for the law firm's expenses.

{¶ 30} On the other hand, there was evidence upon which reasonable minds could have concluded that there was no partnership. First, Mellino and Kampinski did not enter into a written partnership agreement, and Mellino was unable to detail the alleged oral agreement to become partners. Second, the law firm registered with the Secretary of State as a corporation and named Kampinski as the owner and sole shareholder. Third, Mellino filed his taxes each year as an employee of the law firm and never filed a K–1 Form with the IRS. Fourth, the law firm purchased malpractice insurance on behalf of the corporation and its employees. And finally, although Mellino was given many responsibilities, there was evidence that Kampinski still made the final call on every decision.

{¶ 31} These factors are all considerations upon which reasonable minds could have differed on the issue of partnership. Viewing the evidence most strongly in favor of Mellino, the trial court erred in granting the law firm's and Kampinski's

motion for directed verdict on Mellino's partnership claims. Thus, the jury verdict is reversed, and the entire matter is remanded for a new trial.[3]

Judgment reversed
and cause remanded.

CELEBREZZE JR., P.J., concurs.

McMONAGLE, J., concurs in part and dissents in part.

CHRISTINE T. McMONAGLE, J., concurring in part and dissenting in part.

{¶ 32} Respectfully, I concur with the conclusion of the majority that a new trial should be ordered, but I dissent from the majority's holding that there is sufficient evidence of a partnership to entitle plaintiff to present that issue to the jury.

{¶ 33} The seminal issue in this appeal is whether the relationship between Kampinski and Mellino was a partnership or whether Mellino was an employee of the corporation. The trial court, at the conclusion of plaintiff Mellino's case, ruled that there was insufficient evidence of a partnership and removed that issue from the jury's consideration. However, despite removing the partnership claim, she did allow the jury to consider postemployment wages as an element of damages. Both parties appeal: Mellino alleging error on the removal of the partnership issue, and Kampinski alleging error in permitting the jury to consider postemployment wages. It was uncontroverted that if Mellino were an employee, he would be an at-will employee and, absent an agreement or contract to the contrary, would not be entitled to postemployment wages.

{¶ 34} The majority in this matter considered the following facts in holding that the issue of the existence or nonexistence of a partnership should go to a jury: Mellino's wage was calculated as a percentage of the net income of the corporation, increasing by one percent per year every year that he was with the firm. The majority finds that this could be construed as a partnership, as there is a sharing of the good fortune and the expenses of the business. However, Kampinski argues that this was just a formula for computing the wage of his employee. The majority further states that when Kampinski was absent from the office, Mellino was "in charge" and, further, that Mellino could hire and fire employees and sign contracts and checks.

---

3. The law firm's remaining assignment of error and Mellino's third cross-assignment of error (arguing that the trial court erred in denying his motion for prejudgment interest) are rendered moot by virtue of this court's remand. In addition, Mellino's second cross-assignment of error (arguing that the trial court abused its discretion in granting the law firm and Kampinski's motion in limine regarding Michelle Zaballa) is overruled based on the trial court's journal entry showing that the motion was denied.

{¶ 35} The majority concludes that these powers are inconsistent with the role of an employee. Yet employees everywhere are in charge with power to hire and fire, the ability to enter into contracts, sign checks, and otherwise bind their employers. The factors listed by the majority that might support a finding of partnership are also completely consistent with Kampinski's contention that Mellino was an employee.

{¶ 36} These ambiguous factors are contrasted with unambiguous factors such as the fact that the firm is registered with the state of Ohio as a corporation with Kampinski as the owner and sole shareholder and that every year Mellino filed his taxes as an employee of the law firm and never filed a K–1 with the Internal Revenue Service, as would have been required of a partner. The only evidence to the contrary was a line of credit applied for by both Kampinski and Mellino with National City Bank. I believe that the court correctly concluded that there was no significant evidence of a partnership and voluminous evidence that the Kampinski/Mellino relationship, though clearly at one time *personally* close, nonetheless was never anything but that of employer/employee.

{¶ 37} The majority cites *Allen v. Niehaus* (Dec. 14, 2001), Hamilton App. Nos. C–000213 and C–000235, 2001 WL 1589169, for the proposition that a partnership can arise by operation of law when the parties are acting as though they are engaged in a partnership, quoting with approval the statement that the relevant inquiry is "not whether the parties intend that the law describe their relationship as a partnership, but rather whether they intend a relationship that includes the essential elements of partnership." The *Allen* case, however, is not on point here; it involved a suit by a purchaser of real estate (Allen) against two persons (Niehaus and Gvozdanovic). Gvozdanovic settled with Allen. At issue in the case was the nature and extent of the liability of Niehaus, if any, to Allen. The case at bar involves no third parties, but only the relationship of Kampinski and Mellino between themselves; accordingly, any analogy to *Allen* must fail. The majority cites no authority for impressing a partnership upon two persons who have chosen legally to define their relationship as owner/employee of a corporation.[1]

{¶ 38} The majority analyzes the trial court's directed verdict as it would a pretrial motion for summary judgment. In a motion for summary judgment, the trial court looks for any genuine issue of material fact that, if believed, would entitle a party to present the issue at trial. Among other things, summary judgments generally do not implicate the admissibility of any piece of evidence, nor generally does a summary judgment motion include *all* evidence that a party

---

1. This case was filed on April 22, 2002. No partnership claim was made at that time. The partnership theory was not raised until July 9, 2003, in an amended complaint. This surely belies Mellino's claim that he believed himself to be in a partnership with Kampinski and not an employee of the Kampinski Mellino Corporation.

intends to produce at trial. If a motion for summary judgment is overruled, the issue goes to trial and the court may revisit the same issue after listening to all of the admissible evidence. The court then determines whether it is an issue that the party should be entitled to present to a jury. In short, while it may be appropriate to deny a motion for summary judgment on the issue whether there was a partnership, a court could rightfully conclude at the conclusion of the plaintiff's case that this issue would be inappropriately presented to a jury, as "reasonable minds could come to but one conclusion upon the evidence submitted." Civ.R. 50. That is what the trial judge concluded here, and that is the holding I would affirm.

{¶ 39} Accordingly, I believe the court was correct in removing the partnership issue from the jury but in error in allowing the jury to consider posttermination wages. However, I do agree that there appears to be an agreement between Kampinski and Mellino—Kampinski does not deny this—that Mellino should share in income resulting from cases *he brought into the firm* over and above his 17 percent, and there is some evidence that there may be pretermination wages that are still due. Whether any portion of the jury's verdict reflects this is unknown to me, and hence I cannot state with certainty that the verdict against Kampinski should be wholly set aside.

{¶ 40} Accordingly, I would reverse the judgment in this matter and remand the case for a new trial, not upon cross-appellant's allegation of error in the court's removal of the partnership claim but rather upon cross-appellee's allegation of error in permitting the jury to consider posttermination wages in the absence of a partnership claim.