This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendants, Jeffrey Mills ("Mills") and Shannon Golden ("Golden"), each appeal from the judgments of the Wadsworth Municipal Court which convicted Mills of obstruction of official business and resisting arrest and Golden of resisting the arrest of Mills. We affirm.
 {¶ 2} On September 10, 2001, criminal complaints were filed against Mills for obstruction of official business, in violation of R.C.2921.31(A) and for resisting arrest in violation of R.C. 2921.33(A). Golden was charged with resisting the arrest of Mills, in violation of R.C. 2921.33(A). The cases were consolidated. Both defendants filed motions to suppress and Mills also filed a motion to dismiss the complaints. A hearing was held and on March 7, 2002, the court denied all pending motions. The case proceeded to trial. On March 11, 2002, the jury returned a verdict of guilty on all counts. Defendants timely appeal.
 MILLS' ASSIGNMENT OF ERROR I {¶ 3} "The [c]ourt erred in denying the [m]otion to [s]uppress because there was no reasonable suspicion to conduct a Terry stop of [Mills]."
 MILLS' ASSIGNMENT OF ERROR II {¶ 4} "The [c]ourt erred in denying the [m]otion to [s]uppress because there was no probable cause to arrest [Mills]."
 MILLS' ASSIGNMENT OF ERROR III {¶ 5} "The [c]ourt erred when it did not grant [Mills'] motion to dismiss the complaints."
 GOLDEN'S ASSIGNMENT OF ERROR I {¶ 6} "The detainment of *** Golden and *** Mills was unlawful under Ohio case law, Article I, Section 14 of the Ohio Constitution and the Fourth and Fourteenth Amendments of the United States Constitution."
 {¶ 7} In his first, second, and third assignments of error, Mills maintains that the trial court improperly denied his pre-trial motions. Specifically, Mills asserts that the officer did not have reasonable suspicion to conduct an investigatory stop nor probable cause to conduct an arrest. Golden also asserts that the officer did not have reasonable suspicion to conduct and investigatory stop nor probable cause to conduct the arrest of Mills. We disagree.
 {¶ 8} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones, 9th Dist. No. 20810, 2002-Ohio-1109, at ¶ 9. The review of a motion to suppress involves both questions of law and fact. State v. Nietfeld (Sept. 28, 2001), 3rd Dist. No. 2-01-05. See Jones at ¶ 9. An appellate court is to accept the trial court's findings of fact that are supported by competent and credible evidence as the trial court is in the best position to evaluate questions of fact, credibility, and weight of the evidence. State v.Miller (May 23, 2001), 9th Dist. No. 20227, at 5. See, also, Nietfeld, supra. However, the trial court's application of law to the findings of fact is subject to a de novo standard of review; determinations of reasonable suspicion and probable cause are reviewed de novo on appeal.Jones at ¶ 9, citing Ornelas v. United States (1996), 517 U.S. 690,699, 134 L.Ed.2d 911. See, also, Nietfeld, supra. We note that findings of historical fact are to be reviewed for clear error and inferences drawn by judges and law enforcement officers should be given due weight.Jones at ¶ 9, citing Ornelas, 517 U.S. at 699.
 Reasonable Suspicion {¶ 9} The Fourth Amendment to the United States Constitution provides, in part, that "[t]he right of the people to be secure in their persons *** against unreasonable searches and seizures, shall not be violated[.]" Section 14, Article I of the Ohio Constitution also guarantees a similar right. Accordingly, a police officer may conduct an investigative stop of an individual only when he has a reasonable suspicion, based on specific and articulable facts, that an individual is or has been engaged in criminal activity. Jones at ¶ 10, citingTerry v. Ohio (1968), 392 U.S. 1, 19-20, 20 L.Ed.2d 889. See, also, Statev. Fitzgerald, 9th Dist. No. 20866, 2002-Ohio-4523, at ¶ 21. Specifically, the police must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Terry, 392 U.S. at 21;State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
 {¶ 10} Reasonable suspicion is measured by an objective standard: "would the facts available to the officer at the moment of the seizure *** `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" State v. Bobo (1988), 37 Ohio St.3d 177, 178-79, quoting Terry, 392 U.S. at 21-22. See, also, Fitzgerald, at ¶ 21. When determining whether a stop was proper, a court must consider the totality of the circumstances. State v. Anderson (1995),100 Ohio App.3d 688, 692; Bobo, 37 Ohio St.3d 177 at paragraph one of the syllabus. The circumstances surrounding the stop are to be viewed through the eyes of a reasonable and cautious police officer, guided by his experience and training. Bobo, 37 Ohio St.3d at 179, quoting UnitedStates v. Hall (C.A.D.C. 1976), 174, 525 F.2d 857, 859. "Facts which might be given an innocent construction will support the decision to detain an individual momentarily for questioning, so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity." Jones, at ¶ 21, citing UnitedStates v. Cortez (1981), 449 U.S. 411, 417-18, 66 L.Ed.2d 621.
 {¶ 11} The typical Terry stop entails a brief detention sufficient for the police to ask questions pertaining to the suspicious circumstances. State v. Jones (Dec. 3, 1999), 1st. Dist. No. C-990125. However, "Terry does recognize that the police are entitled to take reasonable measures to ensure their own safety, including handcuffing should the situation warrant it." Jones, supra, citing State v. Boykins
(Oct. 29, 1999), 1st Dist. No. C-990101. See, also, State v. White, 2nd Dist. No. 18731, 2002-Ohio-262; State v. Whitfield (Nov. 1, 2000), 7th Dist. No. 99 CA 111 (stating that handcuffing does not automatically convert a stop into an arrest). The facts and circumstances must warrant the use of handcuffs; without an element of risk, the "officer safety" rationale will not apply. Jones, supra; Whitfield, supra. See White,supra.
 {¶ 12} Consequently, we will analyze whether Sergeant Dorland had a reasonable suspicion of criminal activity sufficient to support an investigatory stop and an element of risk to support handcuffing to ensure officer safety.
 {¶ 13} Sergeant Dorland testified that shortly after midnight, on the evening of September 9, 2001, he was patrolling the southern end of Wadsworth. As he was proceeding north on Main Street, near Rainbow Bar, he saw two individuals standing near a wall, one individual bent over and leaning against the wall as if injured, and a fourth person laying face down on the sidewalk in an awkward position. Sergeant Dorland stated that the area was known to police for disturbances and decided to turn his cruiser around; "[m]y immediate concern was that there had just been a fight taken place, and the man on the ground had been injured as a result[.]" As he approached, the three suspects made eye contact with him and started to walk away. He further stated that when he entered the parking lot, the three individuals rounded the back of the building and started to run. Sergeant Dorland explained that he jumped out of his cruiser and requested them to stop. When they ignored his request, Sergeant Dorland gave chase on foot. Initially, he lost sight of them. At some point, Sergeant Dorland spotted Golden at the top of a flight of stairs. After several requests by Sergeant Dorland, Golden began to descend the stairs. Simultaneously, Mills began approaching from Sergeant Dorland's right; Sergeant Dorland stated that Mills "seemingly c[a]me out of nowhere[.]" The third suspects whereabouts were unknown.
 {¶ 14} Sergeant Dorland stated that he made several verbal attempts to stop Mills. Mills ignored these requests and continued to approach. Sergeant Dorland explained that he felt the need to take control of the scene for safety purposes while conducting the investigation. Sergeant Dorland testified that as Mills approached he put his hand on Mills' arm. Mills then tensed his arms, clenched his fists, and flexed his muscles. Sergeant Dorland stated that these nonverbal clues indicated that this was a dangerous situation. He explained to Mills that he was going to handcuff him for a short period while he was conducting the investigation.
 {¶ 15} Upon review of the record, we find that the trial court did not err when it denied Mills' motion to suppress for lack of reasonable suspicion. The testimony indicates that there was unprovoked flight combined with other suspicious behavior. Moreover, Sergeant Dorland was alone with two suspects, a third was unaccounted for, and Mills was ignoring his requests to stop and instead approached the officer. We find that the trial court did not err in concluding that these circumstances established reasonable suspicion to detain Mills while conducting the investigation. Accordingly, Mills' first and third assignments of error, and Golden's first assignment of error, as they relate to reasonable suspicion, are overruled.
 Probable Cause {¶ 16} Under the Fourth Amendment, a warrantless arrest must be based on probable cause. See Beck v. Ohio (1964), 379 U.S. 89, 91,13 L.Ed.2d 142. Probable cause exists when the facts and circumstances known by an officer, at the time of arrest, are sufficient to warrant a reasonable man's belief that a defendant has committed or was committing an offense. Miller, supra, at 6, citing Brinegar v. United States
(1949), 338 U.S. 160, 175-76, 93 L.Ed. 1879.
 {¶ 17} In the present case, Sergeant Dorland testified that when he attempted to cuff Mills for safety purposes, while conducting a Terry
stop, Mills pulled away and refused to cooperate. Sergeant Dorland explained that he then believed Mills was obstructing official business and that he could be arrested. He further explained that he believed Mills' continued resistance established resisting arrest for obstructing official business.
 {¶ 18} As the trial court had the opportunity to observe the witnesses' testimonies and adjudge their credibility, we conclude that the trial court did not err in determining that, based on the evidence adduced at the hearing, Sergeant Dorland had probable cause to arrest Mills. Accordingly, Mills' second and third assignments of error, and Golden's first assignment of error, as they relate to probable cause, are overruled.
 MILLS' ASSIGNMENT OF ERROR IV {¶ 19} "The jury acted against the manifest weight of the evidence when it found [Mills] guilty and there was not sufficient evidence for the [c]ourt to send the case to the jury."
 GOLDEN'S ASSIGNMENT OF ERROR II {¶ 20} "The jury's verdict and the court's denial of [Mills'] motion for directed verdict are against the manifest weight of the evidence."
 {¶ 21} As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 22} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000) 9th Dist. No. 19600, at 3, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 23} When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 24} Mills was found guilty of obstructing official business, in violation of R.C. 2921.31(A). That section provides that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." R.C. 2921.31(A). Mills and Golden were also found guilty of resisting arrest. The relevant section provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." R.C. 2921.33(A).
 {¶ 25} At trial, Sergeant Dorland testified that on the evening of September 9, 2001, he was patrolling the southern end of Wadsworth. As he was proceeding by the Rainbow Bar, on Main Street, he observed one individual lying motionless on the ground and three others standing nearby, one of which was bent over as if injured. Sergeant Dorland explained that the area was known to police for disturbances and his immediate concern was that there had been a fight and the man on the ground had been injured as a result. He stated that he radioed the incident in to dispatch and performed a U-turn. Sergeant Dorland further stated that as he pulled into the parking lot the three individuals began to walk or run away very quickly. Sergeant Dorland explained that he assumed they were running due to the considerable distance they had traveled from the time he had pulled into the parking lot. He testified that he jumped out of the cruiser and ordered them to stop. When his request was ignored, Sergeant Dorland stated that he gave chase on foot, running as fast as possible.
 {¶ 26} Sergeant Dorland eventually made contact with Golden. Sergeant Dorland testified that Golden was standing at the top of a flight of stairs and after several requests to come down she cooperated and began to descend. At this point, Sergeant Dorland stated he noticed Mills approaching from the right. The third suspect was still unaccounted for. Sergeant Dorland stated that he gave verbal commands for Mills to stop. Sergeant Dorland then explained that he became concerned for his safety; he was dealing with multiple subjects in a possible assault incident and one suspect was advancing, with hands balled or clenched at his side, and not reacting to Sergeant Dorland's requests. Sergeant Dorland testified that he then "decided to put handcuffs on [Mills] just to secure him for my own safety[.]" He told Mills the handcuffs would be on for a short period and pulled Mills' left arm behind his back. Sergeant Dorland stated that after Mills' left hand was cuffed he pulled away and refused to cooperate. Sergeant Dorland testified that this continued struggle delayed his ability to check on the alleged victim and delayed the investigation and his ability to search for the third suspect. Sergeant Dorland further testified that he was able to tackle and cuff Mills' right hand only after giving several verbal commands and two mace sprayings. As the struggle occurred, Sergeant Dorland remembered hearing Golden repeatedly yell. However, Sergeant Dorland did not handcuff Golden because she did not physically interfere with him. He stated that she was being passive and generally cooperative at the time.
 {¶ 27} Officer Joel Willard, of the Wadsworth Police Department, also was present that evening. He testified that he observed Golden yelling and arguing. He stated that he told Golden to stay out of the way and not to get involved because she could be charged with resisting arrest. Officer Willard observed Golden advance towards Sergeant Dorland two times while the sergeant was trying to handcuff Mills. He recalled seeing Golden jump in front of Officer King as he was transporting the handcuffed Mills to the police cruiser. Officer Willard stated that Golden's actions disrupted the arrest process momentarily.
 {¶ 28} Officer David King offered similar testimony. He stated that as he was taking Mills to the cruiser, Golden jumped in front of him and remarked that Officer King was not taking Mills anywhere. Officer King told Golden to remove herself and stay out of the way. She refused to cooperate and again said Officer King was not to take Mills anywhere. Officer King testified that Golden's movements interfered with the completion of the arrest process and he was forced to move her aside in order to complete the arrest.
 {¶ 29} Mark Sherman ("Sherman") also testified at trial. He stated that he was the individual Sergeant Dorland observed lying on the ground outside the bar. Sherman further stated that he did not feel good and went outside to rest. He recalled lying there and hearing an individual, who he thought was Mills, say that the cops were there and to "get out of [t]here."
 {¶ 30} Mills and Golden offered conflicting testimony. Golden testified that she was walking to her car when the Sergeant Dorland pulled into the parking lot. She stated that the third suspect said to keep going because the cops were there. Golden further stated that she quickly walked away as her initial intent was to get away from the officer. Golden recalled that she stopped when she heard Sergeant Dorland yelling to do so. She maintained that she was on the third or fourth step of the stairwell and not the top and stated that she descended immediately when Sergeant Dorland requested. Golden recalled seeing three officers tackle Mills. She testified that she never interfered with Officer King as he moved Mills to the cruiser. Golden explained that she was merely inquiring about what was happening and why Mills was being arrested when she subsequently was arrested.
 {¶ 31} Lastly, Mills testified that he had no intent to obstruct the officer's investigation; he explained that he has a seventy-percent hearing loss in his right ear. Mills asserted that he was running to the car to unrinate and did not see Sergeant Dorland until he was chasing after Golden and the third suspect. Mills stated that he finished urinating and stealthily followed ten to fifteen feet behind Sergeant Dorland. He explained that when requested by Sergeant Dorland to "come here" he walked slightly past the officer then turned around and walked back and responded "what can I do for you[?]" Mills testified that Sergeant Dorland then instructed him to turn around and put his hands behind his back. Mills stated that he complied but turned his head to ask why he was being arrested and was then maced. Mills further stated that he was tackled by three or four officers. Additionally, Mills maintained that Golden did not interfere with the arrest but recalled that an officer had to move her out of the way before he was placed in the cruiser. He explained that Golden was simply inquiring about what was occurring.
 {¶ 32} Notwithstanding the conflicting testimony, the jury had the opportunity to view the witnesses' testimony and adjudge their credibility; therefore, we must give deference to the trial court's judgment. See State v. Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. Upon careful review of the testimony and evidence presented at trial, we hold that the trial court did not act contrary to the manifest weight of the evidence in finding Mills guilty of the offenses of obstruction of official business and resisting arrest. Likewise, we do not find that Golden's conviction for resisting arrest was against the manifest weight of the evidence. The record contains sufficient evidence of Mills' and Golden's commission of these offenses. Accordingly, Mills' fourth assignment of error and Golden's second assignment of error are overruled.
 MILLS' ASSIGNMENT OF ERROR V {¶ 33} "The [c]ourt erred in modifying O.J.I. jury instructions."
 {¶ 34} In his fifth assignment of error, Mills' asserts that the trial court erred in modifying the jury instructions contained in Ohio Jury Instructions. We find that Mills waived his objection to these instructions.
 {¶ 35} Crim.R. 30 states, in pertinent part, that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Generally, failure to object constitutes waiver. Statev. Palmison, 9th Dist. No. 20854, 2002-Ohio-2900, at ¶ 38, citingState v. Franklin (1991), 62 Ohio St.3d 118, 128.
 {¶ 36} In the present case, Mills argues that the trial court erred when it modified the jury instructions contained in the Ohio Jury Instructions. However, neither Mills nor his counsel objected to the instructions given to the jury at trial. Therefore, Mills cannot argue that the trial court erred in giving the instruction for the first time on appeal. See State v. Dent, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶ 7. Accordinlgy, Mills' fifth assignment of error is overruled.
 MILLS' ASSIGNMENT OF ERROR VI {¶ 37} "The [c]ourt erred in denying jury instructions tendered by [Mills] and in allowing the State to misstate the law in closing argument."
 {¶ 38} In his sixth assignment of error, Mills asserts that the trial court improperly denied his proposed jury instructions. Mills' sixth assignment of error is not well taken.
 {¶ 39} When considering whether a trial court should have provided a requested jury instruction, an appellate court views the instructions as a whole. Buehler v. Falor, 9th Dist. No. 20673, 2002-Ohio-307, at 2. An appellate court respects the judgment of the trial court absent an abuse of discretion. Buehler at 2. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. An appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
 {¶ 40} Generally, if the requested jury instructions are correct statements of law applicable to the facts of the case, and reasonable minds may reach the conclusion sought, the trial court should give the requested instructions. Buehler, supra, at 2 citing Murphy v. CarrolltonMfg. Co. (1991), 61 Ohio St.3d 585, 591. However, a trial court does not commit reversible error if the instructions given are "sufficiently clear," thereby enabling the jury to understand the law as it is to be applied to the facts. Buehler at 2, citing Atkinson v. Internatl.Technegroup, Inc. (1995), 106 Ohio App.3d 349, 365. A court is not required to give a proposed instruction, that properly states the applicable law, in the exact language requested by its proponent; a court may use its own wording to communicate the same legal principles. Youssefv. Parr, Inc. (1990), 69 Ohio App.3d 679, 690; Atkinson,106 Ohio App.3d at 365.
 {¶ 41} In this case, Mills proposed the following instructions with regard to the crimes of obstructing official business and resisting arrest: "Proposed Jury Instruction No. 3: The assertion of any rights by the defendants does not give rise to committing the offense of obstructing official business[;] *** Proposed Jury Instruction No. 4: The defendant cannot commit the offense of resisting arrest if he attempts to flee the officer during the officer's efforts to detain the defendant for reasonable suspicion only. Resisting arrest can only be committed when there is probable cause to arrest the defendant[;] *** Proposed Jury Instruction No. 5: The defendant cannot commit the offense of obstructing official business if he attempts to flee the officer during the officer's efforts to detain the defendant for reasonable suspicion only. Obstructing official business can only be committed when there is probable cause to arrest the defendant."
 {¶ 42} Upon review of the record, we do not find that the trial court abused its discretion when it failed to provide the jury with Mills' proposed jury instructions. Proposed Jury Instructions Nos. 3 and 4 are not correct statements of law applicable to the facts of this case. The record does not indicate that Mills was arrested for fleeing an officer; nor does the record indicate that Mills was asserting a recognized right that was the basis of the offense of obstructing official business. Additionally, Proposed Jury Instruction No. 5 is an incorrect statement of the law; probable cause to arrest is not an element of obstructing official business. R.C. 2921.31(A).
 {¶ 43} Accordingly, Mills' sixth assignment of error is overruled.
 MILLS' ASSIGNMENT OF ERROR VII {¶ 44} "The [c]ourt erred by denying [Mills] the right of cross examination."
 {¶ 45} In his seventh assignment of error, Mills alleges that the trial court prevented him from significant portions of his cross-examination of Sergeant Dorland. We disagree.
 {¶ 46} The Sixth Amendment to the United States Constitution provides a defendant the right to confront and cross-examine witnesses on relevant issues. Delaware v. Van Arsdall (1986), 475 U.S. 673, 678-79,89 L.Ed.2d 674. However, the Ohio Supreme Court has held that although the "[c]ross-examination of a witness is a matter of right, *** the `extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" State v. Green (1993)66 Ohio St.3d 141, 147, quoting Alford v. United States (1931),282 U.S. 687, 694, 75 L.Ed. 624. See, also, State v. Palmer (Feb. 8, 1995), 9th Dist. No. 2323-M, at 14. Therefore, a trial court is given considerable discretion "to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." State v.Lute (Nov. 22, 2000), 9th Dist. No. 99CA007431, at 17, quoting VanArsdall (1986), 475 U.S. at 679. It is within a trial court's discretion to determine whether testimony is relevant, and an appellate court may not interfere with a trial court's decision absent an abuse of discretion. State v. Younker, 2nd Dist. No. 02CA1581, 2002-Ohio-5376, at ¶ 9.
 {¶ 47} As the Confrontation Clause guarantees only an opportunity for effective cross-examination, and not cross-examination to whatever extent the defense may wish, an appellate court reviewing restrictions imposed on the scope of cross-examination must determine "whether the defendant was denied an opportunity for effective cross-examination."Stow v. Berchenko (Nov. 8, 1995), 9th Dist. No. 17197, at 2-3, citingState v. Lopez (1993), 90 Ohio App.3d 566, 575, quoting Delaware v.Fensterer (1985), 474 U.S. 15, 19-20, 88 L.Ed.2d 15.
 {¶ 48} At trial, the court ruled that Mills could not question Sergeant Dorland about his prior consistent statements regarding the arrest and the time it took to arrest Mills. Upon review of the record in this case, we cannot say that Mills was denied the opportunity for effective cross-examination of Sergeant Dorland. The trial court imposed reasonable limits on the cross-examination of Sergeant Dorland to prevent confusion of the issues and interrogation that was repetitive or only marginally relevant. See Lute, supra, at 17; Van Arsdall,475 U.S. at 679. Accordingly, Mills' seventh assignment of error is overruled.
 MILLS' ASSIGNMENT OF ERROR VIII {¶ 49} "The [c]ourt erred by allowing improper character evidence of [Mills] into evidence."
 MILLS' ASSIGNMENT OF ERROR IX {¶ 50} "The [c]ourt erred by allowing the State to introduce improper evidence."
 {¶ 51} In his eighth and ninth assignments of error, Mills contends that the trial court improperly allowed into evidence testimony regarding Mills' bad conduct discharge from the military, an old felony conviction, and the good character of Sergeant Dorland. Additionally, Mills argues that the court improperly admitted into evidence a police incident report, improperly allowed Sergeant Dorland to testify as a legal expert, and permitted repetitive questioning by the State. Mills' assignments of error are without merit.
 {¶ 52} As a trial court enjoys broad discretion in the admission of evidence, this Court will not overturn a decision absent an abuse of discretion and a showing that the defendant suffered a material prejudice. State v. Martin (1985), 19 Ohio St.3d 122, 129. See, also,State v. Cureton, 9th Dist. No. 01CA3219-M, 2002-Ohio-5547, at ¶ 29. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore, 5 Ohio St.3d at 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons,66 Ohio St.3d at 621.
 Bad Conduct Discharge {¶ 53} Mills asserts Evid.R. 404(A) and (B) when arguing that the evidence of his discharge from the military for abuse of cocaine was improper character evidence. We disagree.
 {¶ 54} Evid.R. 404(A) provides in pertinent part: "Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" Additionally, Evid.R. 404(B) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Nonetheless, the Supreme Court of Ohio has held that when a defendant offers evidence regarding his good character, the introduction opens the door for the prosecution to inquire about a defendant's bad character.See State v. McGlaughlin (Nov. 18, 1998), 9th Dist. No. 19019, at 4-5, citing State v. Wright (1990), 48 Ohio St.3d 5, 8.
 {¶ 55} In this case, on direct examination, Mills' attorney elicited testimony from him pertaining to his military service. Subsequently, on cross-examination, the State inquired about Mills' discharge. Mills responded that he was discharged for bad conduct relating to cocaine abuse. Upon reviewing the testimony, we find that Mills "opened the door" regarding questions pertaining to his military service. Thus, the trial court did not abuse its discretion by permitting a limited inquiry into Mills' discharge from the military. SeeMcGlaughlin, supra, at 4-5. Accordingly, Mills' eighth assignment of error, as it relates to evidence of his discharge is overruled.
 Felony conviction {¶ 56} Mills maintains that the trial court improperly permitted the State to inquire about a felony cocaine abuse conviction that was over ten years old. For the reasons stated below, Mills' assignment of error lacks merit.
 {¶ 57} Although Evid.R. 609(A)(2) states that evidence that an accused has been convicted of a crime punishable by imprisonment in excess of one year is admissible to attack the credibility of a witness, Evid.R. 609(B) creates a time limit. Evidence of a conviction is not admissible if a period of more than ten years has passed since the date of conviction or the release from confinement or termination of probation or parole. Evid.R. 609(B).
 {¶ 58} At trial, defense counsel asserted that more than ten years had passed since the date of Mills' conviction. However, there is no evidence in the record to substantiate counsel's claim. Consequently, we have nothing to pass upon and have "no choice but to presume the validity of the lower court's proceedings and affirm." See Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199. Accordingly, Mills' eighth assignment of error, as it relates to his felony conviction, is overruled.
 Good Character Evidence {¶ 59} Mills alleges that the trial court improperly permitted evidence of Sergeant Dorland's good character. Evid.R. 608(A) provides that "[t]he credibility of a witness may be *** supported by evidence in the form of opinion or reputation, but subject to these limitations *** evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked[.]"
 {¶ 60} Upon a review of the record we find that Sergeant Dorland's credibilty was attacked prior to the eliciting of the character testimony. Consequently, evidence of Sergeant Dorland's good character was admissible. We cannot find that the trial court abused its discretion by admitting this testimony. Accordingly, Mills' eighth assignment of error is overruled, as it relates to the admission of good character evidence.
 Incident Report {¶ 61} Evid.R. 803(8) provides that public records and reports are not admissible in criminal cases to prove matters observed by police officers and other law enforcement personnel unless offered by the defendant. Mills maintains that the trial court improperly admitted into evidence a police incident report which contained the time Sergeant Dorland notified dispatch and the time the dispatcher radioed other officers. When overruling Mills' objection, the judge stated that the report included the date, the time, and noted that the alleged victim was laying on the ground. The judge remarked that he did not know what the report added because everything it contained was previously testified to at trial.
 {¶ 62} Upon review of the record, we do not find that the trial court's actions were unreasonable, unconscionable, or arbitrary. Accordingly, Mills' ninth assignment of error, as it relates to admission of the incident report is overruled.
 Legal Expert Testimony {¶ 63} Mills alleges that the trial court erred when it allowed Sergeant Dorland to testify as a legal expert pertaining to the definition of probable cause. Mills' assignment of error lacks merit.
 {¶ 64} At trial, the State initially asked Sergeant Dorland whether he had probable cause to believe that Mills was engaged in a violation of the laws of Ohio. Mills' counsel timely objected. Subsequently, the court limited the question and stated that "the question is what was in the officer's *** mind to support the actions he took. I'll allow him to testify to that." The judge remarked that the ultimate decision regarding probable cause rested with the jury. The State then re-phrased the question and asked Sergeant Dorland "[what] factors [he] took into consideration to determine whether or not [he] had probable cause[.]" Consequently, we do not find that the trial court permitted Sergeant Dorland to testify as a legal expert pertaining to the definition of probable cause. Accordingly, Mills' ninth assignment of error, as it relates to Sergeant Dorland's testimony, is overruled.
 Repetitive Questioning {¶ 65} In his ninth assignment of error, Mills argues that although the trial court admonished the State for repeating the same question, it nevertheless allowed the question and answer to stand. Mills further proclaimed that "[a]t some point, such evidence becomes cumulative to the point where it prejudices [defendant]." Mills' assignment of error is not well taken.
 {¶ 66} Upon review of the record, we conclude that although the trial court may have improperly admitted the repetitive question and answer, such error was harmless error. Crim.R. 52(A) defines harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[.]" When determining whether an error in the admission of evidence is harmless, an appellate court must find there is "no reasonable probability that the evidence may have contributed to the defendant's conviction." Cureton at ¶ 37, citing State v. DeMarco
(1987), 31 Ohio St.3d 191, 195. See, also, State v. Brown (1992),65 Ohio St.3d 483, 485. After reviewing the record as a whole, this Court is convinced that the repetitive question and answer did not contribute to Mills' conviction. The questions pertained to what business establishments Golden remembered seeing while driving down State Route 94 and why she and Mills stopped at the Rainbow Bar. In light of all the above-referenced testimony, there is no reasonable probability that these questions and answers contributed to Mills' conviction in the present case.
 {¶ 67} Accordingly, Mills' ninth assignment of error, as it pertains to the repetitive questions, is overruled.
 {¶ 68} The assignments of error of Mills and Golden are overruled. The judgment of the Wadsworth Municipal Court is affirmed.
 {¶ 69} The Court finds that there were reasonable grounds for this appeal.
{¶ {¶ 70} We order that a special mandate issue out of this Court, directing the , County of , State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
 {¶ 71} Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
BAIRD, J. and CARR. J., concur