[Cite as *Popovich v. Webster & Webster L.L.P.*, 2014-Ohio-1825.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   99785

---

## STEPHEN F. POPOVICH, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## WEBSTER & WEBSTER L.L.P., ET AL.

DEFENDANTS-APPELLEES

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-10-732418

**BEFORE:**   Keough, P.J., Kilbane, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**   May 1, 2014

**ATTORNEYS FOR APPELLANTS**

Joseph T. George
Law Offices of Joseph T. George
2450 One Cleveland Center
1375 East 9th Street
Cleveland, Ohio 44114

Jan A. Yoss
Younesi & Yoss, L.L.P.
11355 W. Olympic Blvd., Suite 200
Los Angeles, California 90064

**ATTORNEYS FOR APPELLEES**

John G. Farnan
J. Quinn Dorgan
Melanie R. Shaerban
Weston Hurd L.L.P.
The Tower at Erieview
1301 East 9th Street, Suite 1900
Cleveland, Ohio 44114

Beth A. Brandon-Webster
Webster & Webster
1220 West Sixth Street
Suite 600
Cleveland, Ohio 44113

Timothy J. Weyls, Jr.
Weyls Peters, L.L.C.
6505 Rockside Road
Suite 300
Independence, Ohio 44131

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Plaintiffs-appellants, Stephen F. Popovich and Dominic Lemmo, co-personal representatives for the estate of Stephen C. Popovich ("Popovich") appeal various rulings made by the trial court during the pendency of this legal malpractice action. For the reasons that follow, we affirm.

## I. Factual Background

{¶2} In 1962, Cleveland-born Stephen C. Popovich began working in the music industry by stocking warehouse shelves for CBS/Columbia Records. He eventually became vice-president of CBS. In the late 1970s, Popovich left CBS to start his own business, Cleveland Entertainment Company, Inc., (sometimes referred to as "CEC" or "Cleveland"). One of the trade names he used under that entity was "Cleveland International Records" (sometimes referred to as "CIR").

{¶3} Cleveland Entertainment Company had three shareholders — Popovich owned 51 percent, Samuel Lederman owned 29 percent, and Stanford Snyder owned 20 percent. Their company signed a contract with CBS n.k.a. Sony Entertainment Company ("Sony") in 1977 in which Cleveland was to deliver to CBS master recordings, featuring music artists under contract with Cleveland. Cleveland discovered and signed several artists who later became famous, including the artist Meat Loaf. In exchange for royalties paid to Cleveland, CBS had the right to manufacture, distribute, and sell records and tapes derived from those master recordings throughout the world. Meat Loaf's album "Bat Out of Hell" was one of the best selling albums of all time; the royalty rights

became Cleveland's most significant asset.

{¶4} In the early 1980s, Popovich and his partners had a "business divorce" and went their separate ways, although Cleveland was never formally dissolved. The state of New York later administratively deemed the corporation dissolved due to a failure to pay certain taxes or fees. Popovich stayed in the music production business and continued to use "Cleveland International Records" as his own label in subsequent music contracts.

{¶5} In 1995, Popovich formed Popovich Music Group, Ltd. ("PMG") and was its sole owner. This company registered the trade name "Cleveland International Records." At trial, Cliff Drobnik, Popovich's financial advisor, explained that "Cleveland International Records" was Popovich's "calling card."

{¶6} In 1995, Cleveland sued Sony to collect unpaid royalties on the Meat Loaf records pursuant to the 1977 contract (hereinafter the "Royalty Litigation"). Included in the litigation were Lederman and Snyder. Sony agreed to settle the Royalty Litigation claims in 1998 by paying the company $6.7 million. As part of the settlement, Popovich also wanted Sony to put the Cleveland International Records logo on all Meat Loaf album packaging. While this aspect of the settlement was not important to Lederman and Snyder, Popovich was adamant about the inclusion of the logo placement term in the settlement. Sony ultimately agreed, and the logo term was added to the Royalty Litigation settlement agreement. Popovich signed the settlement agreement in his capacity as "President of Cleveland Entertainment Company, Inc." and in his personal capacity.

{¶7} Sony breached the logo placement term of the settlement agreement almost immediately by failing to put the Cleveland International Records logo on the packaging of Meat Loaf's records and tapes. When Popovich discovered the breach, he sought legal representation. After unsuccessfully trying to retain legal counsel on a contingency fee basis to represent him in a lawsuit against Sony, he retained David and Beth Brandon Webster's law firm, Webster & Webster, L.L.P. ("Websters") in 2002, which agreed to take the case on a contingency basis. David Webster was the lead attorney in the case.

{¶8} The Websters filed suit against Sony in the U.S. District Court for the Northern District of Ohio in Popovich's individual capacity, and asserted a variety of claims, including breach of contract in relation to the placement of the Cleveland International Records logo (hereinafter the "Logo Litigation"). Lederman and Snyder were not made a part of the litigation, even though they were made aware of the case.

{¶9} The Logo Litigation spanned over three years. Sony initally moved to dismiss the case, contending that Popovich lacked standing to bring the action in his individual capacity. In response, an amended complaint was filed naming PMG, which had registered the Cleveland International Records trade name, as an additional plaintiff. The court denied Sony's motion to dismiss. Sony again raised the issue of standing in its motion for summary judgment. Again, the motion was denied. After years of litigation, Sony successfully defeated all claims raised against it by Popovich, except whether it breached the 1998 Royalty Litigation settlement agreement regarding the placement of the logo on the Meat Loaf music recordings.

**{¶10}** In May 2005 and following a jury trial, the jury awarded Popovich over $5 million in damages. Following an unsuccessful appeal by Sony, the U.S. Court of Appeals for the Sixth Circuit affirmed the judgment, which resulted in an additional award of more than $700,000 in prejudgment interest.

**{¶11}** After learning of the verdict for Popovich, Lederman and Snyder sued Popovich in 2006, claiming they were entitled to their respective shares of Popovich's recovery in the Logo Litigation (hereinafter the "Lederman Litigation"). Popovich disputed their claim because he believed he owned the Cleveland International Records logo, and he was harmed by Sony's breach of the 1998 Royalty Litigation settlement agreement. Popovich again retained the Websters to represent him in this matter. However, the Websters withdrew in the fall of 2008 because of a fee dispute with Popovich.

**{¶12}** Through new counsel, Popovich defended his position that he was the sole owner of the logo placement provision in the 1998 Royalty Litigation settlement agreement, and the Lederman Litigation went to trial. The issue on trial was whether the logo placement rights in the 1998 Royalty Litigation settlement agreement with Sony belonged exclusively to Popovich or to the long-defunct Cleveland Entertainment Company. In 2009, the Lederman Litigation jury determined the logo belonged to the defunct company, not Popovich exclusively. As a result, the jury determined that the three owners were each entitled to their respective ownership shares in the Logo Litigation judgment, less Popovich's expenses in obtaining the judgment. After the

verdict, Popovich settled with Lederman and Snyder for an amount less than what the jury awarded.

## II. Procedural Background

{¶13} As a result of the Lederman Litigation, Popovich sued the Websters for legal malpractice. On July 16, 2009, Popovich filed his complaint against the Websters' law firm and Beth Brandon Webster, in her capacity as the representative of David Webster's Estate.[1] Six days later, on July 22, 2009, Popovich voluntarily dismissed his complaint. On July 22, 2010, Popovich refiled his complaint against the original defendants, but also named additional defendants — other members of the Webster law firm and Beth Brandon Webster, in her individual capacity.

{¶14} In 2011, while this matter was pending, Popovich passed away suddenly. An amended complaint was filed on December 30, 2011. His son, Stephen F. Popovich, and brother-in-law, Dominic Lemmo, co-executors of his estate, were substituted as plaintiffs, and the case proceeded accordingly.

{¶15} In June 2012, Beth Brandon Webster, in her individual capacity, moved for summary judgment contending that the lawsuit was not filed against her within the one-year statute of limitations for legal malpractice. The trial court summarily granted her motion in December 2012.

{¶16} Following extensive discovery and pretrial conferencing, the matter

---

[1] David Webster passed away weeks after being diagnosed with cancer in 2009.

proceeded to a jury trial. After days of litigation, the jury found in favor of the Websters, specifically determining "that the defendants did not commit legal malpractice."

{¶17} Popovich appeals, raising four assignments of error for our review, which will be addressed together where appropriate.

### III. Theory of the Case

{¶18} Popovich presented two theories of legal malpractice before the trial court — (1) that the Logo Litigation was not brought by the proper plaintiff and (2) that the Websters failed to advise him of any potential liability he might have to Lederman and Snyder based on the Logo Litigation. The first three assignments of error raised by Popovich involve evidentiary rulings and jury instructions regarding whether he was prevented from arguing his first theory of the case.

### A. Sustained Objections

{¶19} In his first assignment of error, Popovich contends that the trial court erred in sustaining objections to the presentation of evidence regarding standing in the underlying Logo Litigation.

{¶20} A thorough reading of the transcript reveals that Popovich was not precluded from presenting evidence on issues concerning standing in the underlying litigation. Rather, the trial transcript is replete with testimony and evidence regarding Popovich's standing to bring the Logo Litigation and whether Webster committed malpractice in failing to advise him that Lederman and Snyder might have a right to a share in any recovery against Sony. In fact, one of the juror questions directed towards

Popovich's own expert, John Christie, inquired as to who he believed had standing to bring the Logo Litigation. (Tr. 768.) The question allowed for four possibilities of who had standing — Popovich, PMG, CEC, and CIR. Christie responded that only CEC had standing to bring the Logo Litigation lawsuit. This was just one instance where a witness was questioned about standing relating to the Logo Litigation. Accordingly, we find no merit to Popovich's first assignment of error.

## B. Barred by Estoppel

{¶21} In his second assignment of error, Popovich contends that the trial court erred in determining that "plaintiff's standing to bring the underlying litigation was determined on the merits in that case and that the judgment was a matter of collateral estoppel and/or judicial estoppel of the issue of whether the case was brought by the proper plaintiff."

{¶22} Citing to only page 649 of the transcript, Popovich contends that the trial court was incorrect in ruling that he was collaterally estopped from raising the standing argument. Contrary to Popovich's argument on appeal, the trial court did not make this determination at this point during the trial. Rather, the record shows that while the Websters' counsel objected based on "collateral estoppel" to the answer given by Popovich's expert, and the trial court sustained the objection, the trial court actually found that the expert's answer was an opinion not contained in the expert report filed. Specifically, the trial court opined that Popovich's expert stated that the Websters committed a fraud on the District Court and to that jury. All parties, including Popovich,

agreed that Christie's expert report did not contain that opinion. As a result, the trial court struck the answer given by John Christie, and gave an instruction to the jury that they were to disregard any inference that the Websters committed a fraud on the court or the jury.

{¶23} In the Logo Litigation, the Websters initially filed the lawsuit against Sony in the name of Popovich as "successor in interest to the recording label Cleveland Entertainment Co, Inc., a/k/a Cleveland International Records." After Sony moved to dismiss the case based on lack of standing, the Websters moved the district court to allow it to amend its complaint to include "Popovich Music Group" as an additional plaintiff. Sony then moved for summary judgment based on Popovich's lack of personal standing. The district court denied Sony's motion, ruling that there was a genuine issue of material fact regarding the rights and benefits accruing from the CIR logo. The court stated, "[w]hile it is an undisputed fact that PMG registered the CIR name and logo, it does not necessary follow that Popovich has no right to benefit from the 1998 agreement." Accordingly, the Logo Litigation went forward and Popovich received a favorable jury verdict against Sony.

{¶24} Popovich contends in this appeal that the district court did not actually determine that he in fact had personal standing to bring the Logo Litigation against Sony. We agree, but we also find the opposite to be equally true — the district court did not determine that Popovich did not have personal standing. The affirmative defense of lack of standing was ultimately abandoned by Sony. However, whether or not Popovich had

personal standing is moot considering that Popovich won the case against Sony. If Popovich did not have standing to bring the Logo Litigation, then the judgment Popovich received in the Logo Litigation was void — presumably a result that neither of the parties in this case would want.

{¶25} In fact, the issues of standing and collateral estoppel were clarified by the trial court below.

> MS. YOSS: No. But what it means was the theory was different. Mr. Orille talked about the Cleveland, Mr. Popovich had the rights to Cleveland International Records and that's what was litigated in logo. This goes to the whole issue of collateral estoppel as some people have been calling the res judicata, there was never a decision made in the determination logo case about entertainment.
>
> THE COURT: I want to touch on that a little bit. Because I said to you that there was res judicata and collateral estoppel on not standing in a universal way, but malpractice as to the litigation. So —
>
> MS. YOSS: As to damages from the malpractice and the litigation.
>
> THE COURT: Yeah. There was no malpractice —
>
> MS. YOSS: Not in –
>
> THE COURT: — in the case. He won the case.
>
> MS. YOSS: I get that. I understand your Honor's point.
>
> THE COURT: So I wanted to clarify. I was thinking about that after we finished yesterday. I didn't want to be misunderstood. Then I further said to you, yes, I understand that there were these other consequences about standing and about who had interest that you want to pursue. I've let you do that. So I just want the — make that argument.

(Tr. 428.)

{¶26} Accordingly, while the trial court may have been mistaken that the issue of

standing was determined on the merits in the Logo Litigation, the court did not err because any defect in standing was cured by the favorable verdict and Sony's abandonment of the affirmative defense.

{¶27} Popovich's second assignment of error is therefore overruled.

## C.   Jury Instruction

{¶28} Popovich contends in his third assignment of error that the trial court erred in instructing the jury that it could not consider whether the underlying litigation was filed in the name of the wrong plaintiff and whether the defendants committed malpractice by filing the complaint in the name of the wrong plaintiff.   The Websters contend that Popovich is barred from making these arguments on appeal because this theory of the case was abandoned during trial; or in the alternative, that this assignment of error should be reviewed only for plain error.

{¶29} In considering the appropriateness of a jury instruction, a reviewing court must view the instructions as a whole.  *Atkinson v. Internatl. Technegroup, Inc.*, 106 Ohio App.3d 349, 365, 666 N.E.2d 257 (1st Dist.1995).   The decision to give instructions is reviewed for an abuse of discretion under the facts and circumstances of the case.  *Berardi's Fresh Roast, Inc. v. PMD Ents., Inc.*, 8th Dist. Cuyahoga No. 93920, 2010-Ohio-5124, ¶ 12.   A trial court has discretion whether to give a requested jury instruction based on the dispositive issues presented during trial.  *Renfro v. Black*, 52 Ohio St.3d 27, 30, 556 N.E.2d 150 (1990).   In order to preserve the right to appeal the giving or failure to give an instruction, a party must object to the instruction before the jury begins deliberating.  Civ.R. 51(A).   We therefore cannot sustain any assigned error relating to jury instructions unless the party raises the objection to the trial court.

{¶30} The trial court gave the jury the following instruction, without objection:

There is no allegation and the jury may not find or consider that there was any malpractice committed by David Webster or his law firm in bringing the logo litigation only in Stephen C. Popovich's name. As to any claims and potential malpractice related to standing, such were cured or obviated by the successful verdict returned by the jury in favor of Stephen C. Popovich.

(Tr. 1059.)

{¶31} Notwithstanding that Popovich did not object to the instruction, a review of the record demonstrates that Popovich abandoned this "standing" or "proper plaintiff" theory of his case.

THE COURT: Well, you had two theories, I guess, with regard to how this could have been mitigated. One theory was bring the lawsuit in the name of Cleveland Entertainment, Inc., and let Lederman and Snyder in from the beginning; yes?

MS. YOSS: That's one of the things our expert said.

THE COURT: Well, are you abandoning that?

MS. YOSS: That's not the theory that we have pursued under because what Mr. Christie opined was there were two things that could have been done and that was one of the things that could have been done.

However, we believe that where the malpractice comes in is —

THE COURT: You are abandoning that? You don't think that the jurors should consider that?

MS. YOSS: That's not what I'm going to ask the jury to consider, no.

THE COURT: So the only thing you want the jury to consider is the intrinsic value — not intrinsic value, but the value that Lederman and Snyder would have imputed or attributed to the logo.

MS. YOSS: Right. If Mr. Popovich had been adequately apprised as to the ownership interest of Cleveland Entertainment in the logo and the logo

provision, under the royalty agreement, he would have then been provided with the opportunity to resolve this issue pre-litigation for a value of [$]539,000 or less. But the failure to have identified that and then throughout the litigation, including as is evidenced by the only writing by Mr. Webster and as we know, it's more incumbent on a lawyer to identify a CYA, to identify here's what I told you could happen. Here's what I told you the circumstance is and you want to go forward with this.

(Tr. 827-830.)

**{¶32}** The abandonment of this theory was a reasonable, tactical decision because Popovich's own expert witness admitted at one point in his testimony that Popovich had personal standing to bring a breach of contract case claim against Sony under the 1998 Royalty Litigation settlement agreement. *See* Tr. 725.

**{¶33}** This court has consistently held that "the deliberate abandonment of any argument at trial precludes subsequently raising the abandoned claim for the first time on appeal." *State v. Azzano*, 8th Dist. Cuyahoga Nos. 68477 and 68479, 1996 Ohio App. LEXIS 1412, *14, (Apr. 4, 1996). *Lake Tomahawk Prop. Owners Assn. v. Smith*, 7th Dist. Columbiana No. 00 CO 37, 2001-Ohio-3970, *5. Because Popovich abandoned the theory at trial that Webster brought the Logo Litigation in the name of the wrong plaintiff, he is precluded from raising this issue on appeal.

**{¶34}** Accordingly, Popovich's third assignment of error is overruled.

IV.  Motion for Summary Judgment

**{¶35}** In his fourth assignment of error, Popovich contends that the trial court erred in granting Beth Brandon Webster's motion for summary judgment because the statute of limitations did not commence until "Popovich discovered that she had been working on the case." The Websters argue that this assignment of error is rendered moot because of the defense verdict.

**{¶36}** Civ.R. 56(C) provides that summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201; *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). We review the trial court's judgment de novo, using the same standard that the trial court applies under Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241. Accordingly, we stand in the shoes of the trial court and conduct an independent review of the record.

**{¶37}** In this case, Popovich's claim against Beth Brandon Webster is one for legal malpractice. Under R.C. 2305.11(A), an action for legal malpractice accrues and the one-year statute of limitations begins to run

> when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398 (1989), syllabus, citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988).

> For the purposes of determining the accrual date of R.C. 2305.11(A) in a legal malpractice action, the trial court must explore the particular facts of the action and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered to him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the cause of such damage or injury.

*Omni* at paragraph two of the syllabus.

**{¶38}** Beth Brandon Webster, in her individual capacity, moved for summary judgment contending that the lawsuit was not filed against her within the one-year statute of limitations for legal malpractice. Specifically, she claimed that because the attorney-client relationship was terminated on September 8, 2008, and Popovich did not file his complaint against her personally until July 22, 2010, she was entitled to judgment as a matter of law. Popovich argued in opposition that his complaint was timely because under the discovery rule, he did not discover Beth Brandon Webster's involvement in the Logo Litigation until May 16, 2011.

**{¶39}** In his brief in opposition to summary judgment, Popovich states that he "could not have discovered that Defendant Beth Webster committed legal malpractice until he discovered the extent of her involvement in the Logo Litigation," which according to Popovich was not until May 16, 2011 when he received the itemized billing

in discovery. The "internal document" evidenced that Beth Brandon Webster spent 584 hours working on the Logo Litigation. He contends that her "prominent role" in the Logo Litigation was concealed from him and his advisor Clifford Drobnick.

{¶40} However, Popovich's amended complaint and his brief in opposition to summary judgment prove otherwise. The amended complaint states,

> 8. At all times relevant hereto, Beth Webster and David Webster were partners, agents and servants of the Webster law firm acting in the course and scope of their partnership, agency and service.
>
> * * *
>
> 64. * * * In fact, when the Lederman Lawsuit was filed, Defendant Beth Brandon Webster informed Popovich "[d]o not worry about it [the Lederman Lawsuit], the statute of limitations has run out." This statement was false.

{¶41} The Lederman Litigation was initially filed in 2006. Therefore, as early as 2006, Popovich should have known that Beth Webster was involved in the representation of Popovich because she was giving her legal opinion to Popovich about the statute of limitations.

{¶42} Moreover, Popovich stated in his brief in opposition to summary judgment that

> Beginning in approximately 2001 through July 2008 and thereafter, David Webster, Beth Brandon Webster and/or other attorneys acting in the course and scope of their agency, service and/or employment of the other Defendants provided legal counsel and advice and otherwise represented Plaintiff with regard to (i) various claims brought by Plaintiff against Sony Music Entertainment, Inc. and its affiliates * * * , and (ii) the Lederman Lawsuit.

{¶43} Additionally, the record shows that Beth Brandon Webster was listed as

counsel on the October 26, 2004 "Plaintiff's Brief in Opposition to Defendant's June 30, 2004 Motion for Summary Judgment."

**{¶44}** Finally, it is interesting that Popovich refiled his complaint in July 2010 and added Beth Brandon Webster, individually, as a defendant, yet he contends that his action against her is not barred by the one-year statute of limitations because he did not discover her involvement with the Logo Litigation until May 2011. Clearly, something must have triggered Popovich to include Beth Brandon Webster as a defendant when he refiled his complaint. Although he argues that he anticipated an action against her, Popovich has not identified any independent action taken by Beth Brandon Webster, in her individual capacity, during the Logo Litigation that would fall outside the general allegation of legal malpractice against the Webster law firm. Popovich only asserts in his brief in opposition, that "the primary act of legal malpractice by the Defendants, including Beth Webster, involves the misidentification of the proper plaintiff in the Logo Litigation."

**{¶45}** Accordingly, Popovich has failed to demonstrate the existence of a genuine issue of material fact that would defeat Beth Brandon Webster's motion for summary judgment.

**{¶46}** Moreover, even if the trial court erred in granting Beth Brandon Webster's summary judgment, the decision would have been rendered moot by the defense jury verdict because the allegation of legal malpractice against Beth Brandon Webster was identical to that against the other defendants.

**{¶47}** Accordingly, Popovich's fourth assignment of error is overruled.

**{¶48}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
EILEEN T. GALLAGHER, J., CONCUR